JERRY LAROTONDA AND LEONIE LAROTONDA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17802-84.          Filed August 13, 1987.

Jerry Larotonda and Leonie Larotonda, pro se.
*Jeffrey W. Frantz*, for the respondent.

JACOBS, *Judge*: Respondent determined a deficiency in petitioners' Federal income tax for 1981 in the amount of $11,796.28, and additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2)[1] of $598.81 and 50 percent of the interest due on the underpayment attributable to negligence, respectively.

The issues for decision are: (1) Whether a payment made from petitioner Jerry Larotonda's Keogh account in compliance with respondent's notice of levy constitutes a taxable distribution; if such payment constitutes a taxable distribution, then (2) whether petitioners are liable for the 10-percent premature distribution penalty under section 72(m)(5); and (3) whether petitioners are liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2).[2]

## FINDINGS OF FACT

The facts in this case have been fully stipulated pursuant to Rule 122 and to the extent relevant and material to the issues to be decided are so found.

Petitioners Jerry and Leonie Larotonda, husband and wife, resided in Miami, Florida, at the time they filed the petition herein. Leonie Larotonda is a party solely by virtue of having filed a joint return with her husband; accordingly, hereafter Jerry Larotonda singularly will be referred to as petitioner.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners failed to include $53 of interest income in their 1981 return; they had no other interest or dividend income in 1981. The deficiency is based in part on petitioners' failure to include the $53 of interest income in their 1981 income.

Sec. 116 allows individuals to exclude $200 of dividend and interest income ($400 for a married couple filing jointly) from gross income. Hence, the omission of the $53 interest income did not result in an understatement of petitioners' 1981 taxable income.

At all relevant times, petitioner was self-employed as an attorney. On December 21, 1976, he established a retirement plan (Keogh account) for himself at First Federal Savings & Loan Association which subsequently became known as Amerifirst Federal Savings & Loan Association (Amerifirst). Petitioner made contributions to his account, and claimed deductions therefor, as follows:

| Date | Amount |
| --- | --- |
| 12/21/76 | $100 |
| 2/17/77 | 7,500 |
| 4/10/78 | 7,400 |
| 4/16/79 | 7,500 |
| 4/14/80 | 7,500 |

Interest on petitioner's contributions was earned and credited to his account as follows:

| Tax year | Amount |
| --- | --- |
| 1976 | $0.21 |
| 1977 | 522.99 |
| 1978 | 1,080.21 |
| 1979 | 1,776.23 |
| 1980 | 2,776.85 |
| 1981 | 2,008.66 |

Petitioners incurred a joint tax liability for 1979[3] which was properly assessed on June 9, 1980. After notice and demand for payment of such liability was made upon petitioners, petitioners remitted a partial payment of $5,000 towards their liability. Efforts to collect the remaining balance then ensued.

In 1981, one of respondent's revenue officers became aware of petitioner's Keogh account at Amerifirst. Thereafter, on April 17, 1981, respondent served a notice of levy on Amerifirst against the account. As of the date the notice of levy was served, petitioners' remaining unpaid tax liability for 1979 was $22,340.94. In compliance with the levy, on April 27, 1981, Amerifirst withdrew $22,340.94 from petitioner's Keogh account and mailed respondent a cashier's check in that amount. Petitioners were advised by Amerifirst of the payment to respondent. At the time of the withdrawal, petitioner had not yet attained the age of 59½, nor was he disabled.

---

[3]Neither the fact of liability for the 1979 tax nor the amount of such liability is in dispute.

On March 21, 1984, respondent issued a notice of deficiency to petitioners with respect to 1981, based on his determination that: (1) The payment made by Amerifirst to respondent constituted a taxable distribution to petitioner; (2) due to such distribution being premature, petitioners are liable for the penalty provided for by section 72(m)(5); and (3) additions to tax under sections 6653(a)(1) and 6653(a)(2) should be imposed.

## OPINION

The Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. 87-792, 76 Stat. 809, amended the Internal Revenue Code to permit a self-employed individual to establish and make deductible contributions within specified limits to a qualified retirement plan for his own benefit. These plans, known as Keogh plans, contain more restrictions than do corporate plans, but they permit self-employed individuals to receive tax benefits analogous to those available under qualified corporate plans. One such restriction is that there can be no distribution of plan benefits to an owner-employee (i.e., the self-employed person) prior to the time he attains age 59½, except in the case of disability. Sec. 401(d)(4)(B). In the event an owner-employee receives a distribution from the plan in contravention of this prohibition, section 72(m)(5)[4] imposes a penalty equal to 10 percent of the amount of the prohibited distribution.

---

[4]Sec. 72(m)(5)(A) provides as follows:

Sec. 72(m). SPECIAL RULES APPLICABLE TO EMPLOYEE ANNUITIES AND DISTRIBUTIONS UNDER EMPLOYEE PLANS.—

(5) PENALTIES APPLICABLE TO CERTAIN AMOUNTS RECEIVED BY OWNER-EMPLOYEES.—

(A) This paragraph shall apply—

(i) to amounts * * * which are received from a qualified trust described in section 401(a) or under a plan described in section 403(a) and which are received by an individual, who is, or has been, an owner-employee, before such individual attains the age of 59½ years, for any reason other than the individual's becoming disabled (within the meaning of paragraph (7) of this subsection), but only to the extent that such amounts are attributable to contributions paid on behalf of such individual (other than contributions made by him as an owner-employee) while he was an owner-employee, * * *

\* \* \* \* \* \* \*

(B) If a person receives an amount to which this paragraph applies, his tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of the amount so received which is includible in his gross income for such taxable year.

Respondent contends that petitioner constructively received $22,340.94 from his Keogh account when the levied funds were withdrawn to pay petitioners' 1979 tax liability. We agree with respondent.

Section 402(a) provides, in pertinent part:

the amount actually distributed or made available to any distributee by an employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year so distributed or made available, under section 72 (relating to annuities).

Section 72(m)(4)(A) provides:

If during any taxable year an owner-employee assigns (or agrees to assign) or pledges (or agrees to pledge) any portion of his interest in a trust described in section 401(a) which is exempt from tax under section 501(a), * * * such portion shall be treated as having been received by such owner-employee as a distribution from such trust. * * *

Payment of Federal taxes by means of levy, distraint, or legal proceeding constitutes an involuntary payment or assignment. See *In re Quakertown Shopping Center, Inc.*, 366 F.2d 95, 98 (3d Cir. 1966); *Amos v. Commissioner*, 47 T.C. 65 (1966). Here, respondent levied on the petitioner's Keogh account pursuant to section 6331. The levy constituted an assignment, albeit involuntary, of the Keogh account funds by, or on behalf of, petitioner. As such, petitioner is deemed, pursuant to section 72(m)(4)(A), to have constructively received the $22,340.94 in levied funds as a distribution from the Keogh account. Sec. 1.72-17(d)(1), Income Tax Regs. This amount is includable in petitioners' 1981 gross income to the extent deductions were obtained for the contributions to the account in the subject years 1976 through 1980.[5] Sec. 402(a); sec. 72. As petitioners claimed deductions with respect to account contributions in excess of $22,340.94 during these years, the $22,340.94 withdrawn from the account by levy is properly includable in gross income.

Having found that the payment from petitioner's Keogh account to respondent constitutes a taxable distribution to petitioners, we now must decide whether petitioners are

---

[5]Petitioner contributed $30,000 to the account in the years 1976 through 1980, and deducted this amount on the income tax returns filed for those years. In addition, $8,165.15 was applied to the account as interest during this period.

liable for the 10-percent premature-distribution penalty provided for by section 72(m)(5). Admittedly, this is a close question; however, taking the underlying legislative intent as our guide, we believe that this penalty should not be imposed herein.

The relevant House and Senate Committee reports[6] indicate that the premature distribution penalty was designed "to prevent retirement plans from, in effect, becoming income-averaging plans under which deductible contributions would be made to the plan in high-income, high-tax years and the assets would be drawn down in low-income or loss years when little or no tax would be due." Thus it is clear that Congress intended to prevent the voluntary, tax-motivated withdrawal of funds by taxpayers prior to retirement age.

No such voluntary withdrawal occurred here. To the contrary, the funds were withdrawn pursuant to respondent's levy, an involuntary act, without any active participation by petitioner. In our opinion, to impose the penalty herein would be like throwing salt into a wound.

We are also mindful of the rule frequently stated by the Supreme Court that "taxing acts are not to be extended by implication beyond the clear impact of the language used" and that "doubts are to be resolved against the government and in favor of the taxpayer." *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 93-94 (1934). Although the parties have stipulated that in 1981, the petitioners' marginal Federal income tax bracket was lower than their marginal Federal income tax bracket in years 1976-80, inclusive, doubt exists in our mind as to whether the penalty was designed to cover the situation involved herein. Because of such doubt, we think it judicious to resolve this issue in favor of the taxpayer.

Finally, we must decide whether additions to tax pursuant to section 6653(a)(1) and (a)(2) should be imposed. Section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for an

---

[6]H. Rept. 378, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 273; S. Rept. 992, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 324.

addition to tax of 50 percent of the interest payable on the underpayment attributable to negligence or intentional disregard of such rules and regulations. For purposes of section 6653(a), negligence is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Bixby v. Commissioner*, 58 T.C. 757, 791-792 (1972); *Marcello v. Commissioner*, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964), and a Memorandum Opinion of this Court.

Respondent contends that petitioners' failure to include the amount distributed from the Keogh account in income constituted negligence. We disagree; we believe petitioners reasonably, but erroneously, assumed that the involuntary assignment of petitioner's Keogh account did not constitute income to them in 1981. Accordingly, respondent's determination for the additions to tax is not sustained.

To reflect the foregoing,

*Decision will be entered under Rule 155.*