T.C. Memo. 1998-13

UNITED STATES TAX COURT

FRANCISCO A. MURILLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18163-96.                      Filed January 12, 1998.

Francisco A. Murillo, pro se.

<u>Andrew J. Mandell</u> and <u>Lewis J. Abrahams</u>, for respondent.

MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax in the amount of $94,759 for the
taxable year 1992.  The issues for decision are:

(1) Whether petitioner is entitled to a loss deduction for
money forfeited to the United States;

(2) if not, whether imposing a liability for taxes on forfeited money without allowing a loss deduction violates the Double Jeopardy Clause of the Fifth Amendment or the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution; and

(3) whether petitioner is subject to the tax on early distributions from his individual retirement accounts (IRA's) under section 72(t).[1]

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Mineola, New York, at the time he filed the petition in this case.

Background

In April of 1987, after a 29-year career with Bank of America, petitioner's job was eliminated in the course of a corporate reorganization and his services terminated.  During 1987, petitioner received a lump-sum payment of $207,050 from his retirement plan which he rolled over into a retirement account at Merrill Lynch.  He also received a net payment of $43,194.99 from

---

[1]  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Bank of America which he rolled over into various accounts he opened with Fidelity Investments.

Between January 19, 1988, and August 23, 1989, approximately $596,736 in U.S. currency was deposited in five of petitioner's bank accounts in the New York City metropolitan area, all in amounts of less than $10,000. An indictment was filed against petitioner on May 23, 1991, and a superseding indictment on August 6, 1991. The superseding indictment charged petitioner with: (1) Conspiracy to structure cash deposits into bank accounts in the New York area for the purpose of avoiding Federal currency transaction reporting requirements; (2) 22 substantive structuring counts relating to approximately $1,026,855 in U. S. currency deposited into various bank accounts during the period January 19, 1988, through August 23, 1989, in violation of 31 U.S.C. sections 5324(3) and 5322(a) (1988); and (3) 10 counts alleging violations of customs reporting requirements.

On January 9, 1992, petitioner entered into a plea agreement whereby he agreed to plead guilty to 10 of the 22 substantive structuring counts contained in the superseding indictment. In a related civil proceeding, all funds on deposit in a number of petitioner's accounts were forfeited to the United States pursuant to 18 U.S.C. section 981 (1988 and Supp. II 1990). The Consent Decree of Forfeiture and Order of Delivery in that proceeding was issued on January 9, 1992. In the plea agreement,

the U.S. Attorney's Office recommended that, because of the Decree of Forfeiture, the imposition of a fine was not warranted. The sentencing court agreed with the recommendation and, on June 23, 1992, petitioner was ordered to pay a special assessment of $500 and was sentenced to 38 months' imprisonment for each of the counts, with the terms of imprisonment to run concurrently for a total of 38 months' imprisonment.

Among the accounts forfeited were petitioner's IRA's at Merrill Lynch and Fidelity Investments (the IRA's). The total amount forfeited from the IRA's (the IRA distributions) was $230,161. Petitioner was 57 years old at the time of the IRA distributions.

Petitioner reported the IRA distributions as taxable income on his 1992 Federal income tax return. He did not include the 10-percent additional tax on early distributions from qualified retirement plans pursuant to section 72(t) (the section 72(t) tax). Petitioner does not meet any of the exceptions to the section 72(t) tax provided in section 72(t)(2).[2] Petitioner claimed a Schedule C loss, that respondent disallowed, in the amount of $273,417.47, attributed to the forfeiture.

---

[2] The exception for distributions set forth in subparagraph (A)(v) of sec. 72(t)(2) does not apply to IRA distributions. Sec. 72(t)(3)(A).

## Discussion

### Loss Deduction

Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  In the case of an individual, the deduction is limited to losses incurred in a trade or business or in any transaction entered for profit or to certain theft or casualty losses.  Sec. 165(c).  Courts consistently have disallowed loss deductions where the deduction would frustrate a sharply defined Federal or State policy.  Wood v. United States, 863 F.2d 417 (5th Cir. 1989); Fuller v. Commissioner, 213 F.2d 102 (10th Cir. 1954), affg. 20 T.C. 308 (1953); Holmes Enterprises v. Commissioner, 69 T.C. 114 (1977).  The test of nondeductibility is the severity and immediacy of the frustration resulting from allowance of the deduction. Stephens v. Commissioner, 905 F.2d 667, 670 (2d Cir. 1990), revg. on other grounds 93 T.C. 108 (1989); Wood v. United States, supra.

Petitioner pleaded guilty to 10 counts of structuring cash transactions in violation of Federal statutes, including 31 U.S.C. section 5324(3) (1988).  The civil forfeiture of petitioner's accounts was pursuant to 18 U.S.C. section 981 (1988 and Supp. II 1990) which provides that "Any property, real or personal, involved in a transaction or attempted transaction in violation of 5313(a) or 5234 of title 31, * * * , or any property

traceable to such property" is subject to forfeiture to the United States.  18 U.S.C. sec. 981(a)(1)(A).  The title 31 sections establish the Federal Government's policy against structuring.  See Stephens v. Commissioner, 905 F.2d at 670.  To allow petitioner a deduction for losses arising out of illegal activities would undermine public policy by permitting a portion of the forfeiture to be borne by the Government, thus taking the "sting" out of the forfeiture.  See Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30, 35 (1958); Wood v. United States, supra at 422; Holt v. Commissioner, 69 T.C. 75, 81 (1977), affd. 611 F.2d 1160 (5th Cir. 1980); Farris v. Commissioner, T.C. Memo. 1985-346, affd. without published opinion 823 F.2d 1552 (9th Cir. 1987).  Petitioner seeks to draw a line between his situation and the cases denying deductions for forfeitures on the ground that such cases involved drug dealers whose activities involve much more serious violations of law than his structuring of bank deposits.  We think this distinction is without merit.  The Congress, by its enactment of the antistructuring statutory provisions, established a declared public policy.  Taking into account the "presumption against congressional intent to encourage violation of declared public policy", Tank Truck Rentals, Inc. v. Commissioner, supra at 35, and that the antistructuring provisions constituted subtitle H of the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 100 Stat. 3207, 3207-22,

we think it clear that allowance of petitioner's claimed deduction would frustrate a clearly defined national policy.

We hold that petitioner is not entitled to a loss deduction.

<u>Constitutional Arguments</u>

Petitioner argues that taxing the IRA distributions without allowing a loss deduction for the forfeiture violates the Double Jeopardy Clause of the Fifth Amendment[3] and the Excessive Fines Clause of the Eighth Amendment[4] to the U.S. Constitution. Petitioner cites <u>Department of Revenue v. Kurth Ranch</u>, 511 U.S. 767 (1994); <u>Austin v. United States</u>, 509 U.S. 602 (1993); and <u>United States v. Halper</u>, 490 U.S. 435, 440 (1989).

Both the Double Jeopardy Clause and the Excessive Fines Clause protect individuals against punishment. <u>United States v. Alt</u>, 83 F.3d 779, 784 (6th Cir. 1996). The imposition of liability for a Federal income tax deficiency has a remedial intent and is not a punishment. <u>Id.</u>; <u>McNichols v. Commissioner</u>, 13 F.3d 432 (1st Cir. 1993), affg. T.C. Memo. 1993-61; <u>Ianniello v. Commissioner</u>, 98 T.C. 165, 180 (1992); cf. <u>Helvering v. Mitchell</u>, 303 U.S. 391, 397 (1938) (holding that the addition to tax for fraud is remedial). Courts have considered the cases

---

[3] U.S. Const. amend. V provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb".

[4] U.S. Const. amend. VIII provides "Excessive bail shall not be required, nor excessive fines imposed".

cited by petitioner in the Federal income tax arena and found that these cases did not apply for purposes of the Double Jeopardy Clause or the Excessive Fines Clause.  United States v. Alt, supra; Thomas v. Commissioner, 62 F.3d 97 (4th Cir. 1995), affg. T.C. Memo. 1994-128; McNichols v. Commissioner, supra; see United States v. Ursery, 518 U.S. ___, 116 S.Ct. 2135 (1996) (which considered the cases petitioner cites in the context of a civil forfeiture under 18 U.S.C. sec. 981, the same statute under which petitioner forfeited his funds, and held that such civil forfeiture was not punishment for purposes of the Double Jeopardy Clause); see also Hudson v. United States, 522 U.S. ___ (Dec. 10, 1997) (which provides a further analysis of the cases which petitioner cites).

We hold that the denial of the loss deduction while imposing a liability for Federal income tax on the forfeited money does not violate the Double Jeopardy Clause or the Excessive Fines Clause.

Section 72(t) Tax

Section 72(t)(1) provides:

> If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

IRA's are qualified retirement plans as defined in section 4974(c). Sec. 4974(c)(4). Section 72(t)(2) provides for certain exceptions, none of which apply to petitioner.

Petitioner argues that the IRA distributions should not be subject to the section 72(t) tax because he personally did not receive the funds or receive a benefit therefrom and the withdrawals were involuntary. Respondent counters with the assertion that, unless one of the exceptions applies, statutory language requires the imposition of the addition to tax, irrespective of actual receipt by or benefit to the taxpayer or the "voluntary" nature of the distribution.

Petitioner constructively received the IRA distributions when his accounts were forfeited and cannot escape taxation on the basis that the funds were disbursed to a third party. Larotonda v. Commissioner, 89 T.C. 287, 291 (1987) (Keogh plan withdrawal pursuant to respondent's income tax levy)[5]; Vorwald v. Commissioner, T.C. Memo. 1997-15 (IRA garnished to pay child support); cf. Kochell v. United States, 804 F.2d 84 (7th Cir. 1986) (trustee in bankruptcy, who succeeded to rights of IRA beneficiary, was held taxable on distribution used to satisfy creditors of the beneficiary).

---

[5] See also Pilipski v. Commissioner, T.C. Memo. 1993-461 (to the same circuit).

The purpose of the early withdrawal penalty is to prevent the diversion of IRA funds to nonretirement uses and to recapture a measure of the tax benefits that have been provided. S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 1, 612-613; H. Rept. 99-426, 1986-3 C.B. (Vol. 2) 1, 728-729; see also Aronson v. Commissioner, 98 T.C. 283, 290-291 (1992) (discussing former sec. 408(f), the predecessor of sec. 72(t)). The language of section 72(t) does not differentiate between voluntary and involuntary withdrawals. Thus, we have held the section 72(t) tax to be applicable where the taxpayer did not initiate the distribution. Clark v. Commissioner, 101 T.C. 215 (1993) (pension plan distribution due to termination of plan); Aronson v. Commissioner, supra (IRA distribution followed insolvency of financial institution); Vorwald v. Commissioner, supra. On the other hand, in Larotonda v. Commissioner, 89 T.C. at 292, we recognized the same legislative purpose in respect of the addition to tax on distributions from Keogh plans under section 72(m)(5), but held that that section did not apply where the proceeds of such a plan were levied upon to satisfy respondent's income tax levy. We reaffirmed our holding in Larotonda in Aronson v. Commissioner, supra at 292, pointing out that in Larotonda: "The IRS notice of levy triggered the taxable event, and we were concerned that Congress did not intend the additional tax to apply to such a situation. Consequently, we ruled for the taxpayers and

concluded that they were not liable for the 10-percent additional tax".

We think that the instant case falls within Larotonda. Here, the decree of forfeiture not only triggered but was itself the event which constituted the IRA withdrawals. In this context, the presence of an obligation on the part of the taxpayer is less clearly defined in the case of a forfeiture than when there is a levy to satisfy a previously determined tax liability. Moreover, unlike the taxpayer in Aronson, petitioner herein neither received nor had control of the use of the IRA distributions. We are not persuaded by respondent's argument that the instant situation falls within the ambit of Aronson because, by virtue of the plea agreement, his consent to the forfeiture, and his avoidance of a fine or potentially longer prison sentence, petitioner should be treated as having voluntarily made a premature withdrawal and therefore should be liable for the 10-percent addition to tax under section 72(t). We do not believe the circumstances surrounding the plea agreement were such as to impart a "voluntary" patina to the IRA withdrawals. In the final analysis, petitioner had no realistic choice. See Waldman v. Commissioner, 88 T.C. 1384, 1389 (1987), affd. in a published order 850 F.2d 611 (9th Cir. 1988), where a plea agreement did not avoid characterization of a payment as a fine or penalty.

We hold that petitioner is not liable for the section 72(t) tax with respect to the IRA distributions.

To implement our holding herein, decision will be entered for respondent in respect of the basic deficiency in income tax but for petitioner in respect of the 10-percent addition to tax under section 72(t).

<u>An appropriate decision will be entered</u>.