T.C. Memo. 2009-263

UNITED STATES TAX COURT

JAMES A. AND LINDA A. WILLHITE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13816-08.              Filed November 18, 2009.

James A. and Linda A. Willhite, pro sese.

<u>Jason M. Kuratnick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of

$36,969 in petitioners' Federal income tax (Federal tax) for

taxable year 2004.

We must decide whether for taxable year 2004 the distribu-

tion in question from the individual retirement account of

petitioner James A. Willhite is subject to the additional tax imposed by section 72(t)(1).[1]  We hold it is.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioners resided in Pennsylvania at the time they filed the petition in this case.

Respondent issued to petitioners a document dated December 10, 2001, with the heading "**<u>Urgent!!</u>  We intend to levy on certain assets.  Please respond NOW**" with respect to petitioners' unpaid Federal tax, penalty, and interest (Federal tax liability) for taxable year 2000.  That document stated in pertinent part:

> Our records indicate that you haven't paid the amount you owe.  The law requires that you pay your tax at the time you file your return.  This is your notice, as required by Internal Revenue Code Section 6331(d), of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full.  In addition, we will begin to search for other assets we may levy. * * * **To prevent collection action, please pay the current balance now.**  If you've already paid, can't pay, or have arranged for an installment agreement, it is important that you **call us immediately** * * *.

Respondent issued to petitioners a document dated March 22, 2004, with the heading "**Notice of Intent to Levy, You Defaulted**

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**on Your Installment Agreement**" with respect to petitioners'

unpaid Federal tax liability for taxable year 2002 (March 22,

2004 notice).  That document stated in pertinent part:

> This is a formal notice of our intent to terminate your
> installment agreement 30 days from the date of this
> notice.  You defaulted on your agreement because **you
> didn't pay the additional federal tax you owe.**  The
> agreement states that we may terminate your agreement
> and collect the entire amount of your tax liability if
> you don't meet all the conditions.  This is your no-
> tice, as required by Internal Revenue Code Section
> 6331(d), of our intent to levy (take) any state tax
> refunds to which you may be entitled. * * * In addi-
> tion, we will begin to search for other assets we may
> levy.  To prevent collection action you must **pay in
> full any additional federal taxes you owe.** * * * If you
> don't agree with this decision, you have a right to
> request Appeals consideration * * *.

Respondent issued to petitioners a document dated July 12,

2004, with the heading "**IMPORTANT**, Immediate action is required"

with respect to petitioners' unpaid Federal tax liability for

taxable year 2003.  That document stated in pertinent part:

> We previously wrote to you about your unpaid account,
> but you haven't contacted us about it. * * * Please pay
> the amount you owe within ten days from the date of
> this notice.  If you can't pay now, call us at the
> number shown below.  You may be qualified for an in-
> stallment agreement or payroll deduction agreement.  We
> want to help you resolve this bill.  However, if we
> don't hear from you, we will have no choice but to
> proceed with steps required to collect the amount you
> owe.  **If you already paid your balance in full or
> arranged for an installment agreement, please disregard
> this notice.**

On July 27, 2004, petitioners requested an installment

agreement with respect to their unpaid Federal tax liability for

taxable year 2003.  By letter dated August 3, 2004, respondent granted that request.

At an undisclosed time during 2004 when petitioner James A. Willhite (Mr. Willhite) was under 59-1/2 years old, he withdrew $397,994.60 (2004 IRA distribution) from his individual retirement account (IRA) that he maintained at Cigna Corp. (Mr. Willhite's IRA).  Mr. Willhite used $57,172.31 of that distribution to pay petitioners' unpaid Federal tax liabilities for taxable years 2001, 2002, and 2003, respectively.  At a time during 2004 when Mr. Willhite was unemployed, petitioners paid health insurance premiums of $16,763.86.  During that year, he also paid "qualified higher education expenses", as defined in section 72(t)(7), of $11,539.76.  Mr. Willhite used the balance of the 2004 IRA distribution to pay (1) petitioners' New Jersey, Pennsylvania, and Delaware tax liabilities (State tax liabilities) and (2) their mortgage liabilities, real estate taxes, and credit card debt.

Respondent issued to petitioners a document dated July 4, 2005, with the heading "**Notice of Intent to Levy, You Defaulted On Your Installment Agreement**" with respect to taxable year 2003 (July 4, 2005 notice).  That document stated in pertinent part:

> This is a formal notice of our intent to terminate your installment agreement 30 days from the date of this notice.  You defaulted on your agreement because **you didn't make your payments as agreed.**  The agreement states that we may terminate your agreement and collect the entire amount of your tax liability if you don't

meet all the conditions.  This is your notice, as required by Internal Revenue Code Section 6331(d), of our intent to levy (take) any state tax refunds to which you may be entitled. * * * In addition, we will begin to search for other assets we may levy.  To prevent collection action you must **bring your account up to date by paying your past due amount, as well as any current payments due.** * * * If you don't agree with this decision, you have a right to request Appeals consideration * * *.

Petitioners filed Form 1040, U.S. Individual Income Tax Return, for taxable year 2004 (2004 return).  In that return, petitioners included in gross income the 2004 IRA distribution of $397,994.60 that Mr. Willhite received during 2004.  Petitioners did not report in the 2004 return that they are subject to the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans (10-percent additional tax).

Respondent issued a notice of deficiency to petitioners for taxable year 2004 (2004 notice).  In that notice, respondent determined that petitioners are liable for the 10-percent additional tax on $369,690.98 of the 2004 IRA distribution that Mr. Willhite received during 2004.[2]

---

[2]In determining in the 2004 notice the 10-percent additional tax for which petitioners are liable for taxable year 2004, respondent reduced the 2004 IRA distribution of $397,994.60 by the total of the amounts that petitioners used during that year to pay health insurance premiums (i.e., $16,763.86) and "qualified higher education expenses", as defined in sec. 72(t)(7) (i.e., $11,539.76).  See sec. 72(t)(2)(D) and (E).

As of the time of the trial in this case, respondent had not levied any of petitioners' assets, including Mr. Willhite's IRA.

OPINION

Petitioners bear the burden of proving that the determination in the 2004 notice is erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The parties submitted this case fully stipulated under Rule 122. That this case was submitted fully stipulated does not change the burden or the effect of a failure of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

It is the position of petitioners on brief that the portion (IRA distribution in question) of the 2004 IRA distribution that they used to pay their unpaid Federal tax liabilities for taxable years 2001, 2002, and 2003, respectively, i.e., $57,172.31, is not subject to the 10-percent additional tax.[3] In support of that position, petitioners rely on section 72(t)(2)(A)(vii).

Section 72(t)(1) provides:

> SEC. 72.  ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND
>          LIFE INSURANCE CONTRACTS.
>
>      (t) 10-Percent Additional Tax on Early Distribu-
> tions from Qualified Retirement Plans.--

---

[3]Petitioners make no argument on brief that the balance of the 2004 IRA distribution that petitioners used during 2004 to pay State tax liabilities, mortgage liabilities, real estate taxes, and credit card debt is not subject to the 10-percent additional tax.

> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

A "qualified retirement plan" includes an IRA. See sec. 4974(c)(4).

Section 72(t)(2) provides certain exceptions to the 10-percent additional tax imposed by section 72(t)(1). As pertinent here, section 72(t)(2)(A)(vii) on which petitioners rely excepts from that tax distributions "made on account of a levy under section 6331 on the qualified retirement plan."

In support of their argument that the exception in section 72(t)(2)(A)(vii) applies to the IRA distribution in question, petitioners assert:

> The IRS twice sent petitioners formal written Notice of Intent to Levy as required by IRC § 6331(d).
>
> - Notice of Intent to Levy dated March 22, 2004 * * * and
>
> - Notice of Intent to Levy dated July 4, 2005 * * *.
>
> Having received these Notices of Intent to Levy, and treating the matter seriously and in good faith and believing that the IRS would do in fact what it said it intended to do, and observing that they had only one asset which could be used by themselves or taken by IRS to pay off the past due taxes owing, petitioners paid the past due taxes in the amount of $57,172.31 from their retirement account. * * *
>
> * * * Giving Notice of Intent to Levy is the first step in the process of "levy and distraint" set out in

section 6331 of the Code.  I.R.C. § 6331(d).  Once the Notice of Intent to Levy is delivered as provided in the statute, the process of levying the taxpayer's assets has begun, and, 30 days after giving Notice, the agency may seize and continue to seize and sell assets until the back tax is paid off.  I.R.C. § 6331(c).

* * * The IRS initiated a levy against petitioners' assets, including the retirement account, by issuing Notice under section 6331(d).

  *       *       *       *       *       *       *

* * * Once the IRS decides to levy, it is required by law to give Notice of its intent to levy, and the reason for the notice is to prompt the taxpayer to take action to avoid the levy.  Here, the only action which could be taken to stop a levy on the retirement account after issuance of statutory Notice was to make a withdrawal and pay the back taxes.  If petitioners did not make the withdrawal and pay the back taxes, IRS would. There was no choice in the matter.  "In the final analysis, petitioner[s] had no realistic choice." Murillo v. Commissioner * * * [T.C. Memo. 1998-13, affd. without published opinion on other issues 166 F.3d 1201 (2d Cir. 1998)], citing Larotonda * * * [v. Commissioner, 89 T.C. 287 (1987)].  Petitioners did exactly what the law, and the IRS, wanted, compelled, them to do--use the one asset they had left to pay off the back taxes. * * *  [Reproduced literally.]

Petitioners' arguments are factually and legally flawed, and petitioners' reliance on Larotonda v. Commissioner, 89 T.C. 287 (1987), and Murillo v. Commissioner, T.C. Memo. 1998-13, affd. without published opinion on other issues 166 F.3d 1201 (2d Cir. 1998), is misplaced.

We turn first to factual flaws in petitioners' arguments. Petitioners argue that the July 4, 2005 notice caused Mr. Willhite to make the withdrawal during 2004 that he received from Mr. Willhite's IRA.  However, respondent did not issue that

notice to petitioners until the year after Mr. Willhite decided to make that withdrawal and received the 2004 IRA distribution.

Petitioners also argue that "The IRS initiated a levy against petitioners' assets, including the retirement account, by issuing Notice under section 6331(d)." However, the March 22, 2004 notice pertained only to respondent's "intent to levy (take) any state tax refunds to which you [petitioners] may be entitled." That notice did not pertain to any of petitioners' other assets, including Mr. Willhite's IRA.[4]

We turn next to legal flaws in petitioners' arguments. Petitioners argue that "Once the Notice of Intent to Levy is delivered as provided in the statute, the process of levying the taxpayer's assets has begun, and, 30 days after giving Notice, the agency may seize and continue to seize and sell assets until the back tax is paid off." However, as pertinent here, before levying a taxpayer's assets in order to satisfy the taxpayer's unpaid Federal tax liability, section 6330(a)(1) requires the Commissioner of Internal Revenue (Commissioner), inter alia, to notify the taxpayer "in writing of * * * [the taxpayer's] right to a hearing under this section before such levy is made."[5]

---

[4]The July 4, 2005 notice that respondent issued after the year in which Mr. Willhite received the 2004 IRA distribution also pertained only to respondent's "intent to levy (take) any state tax refunds to which you [petitioners] may be entitled."

[5]Exceptions to the notice required by sec. 6330(a) are set
(continued...)

Petitioners do not contend, and the record does not establish, that during or before 2004 respondent issued to petitioners the notice of a right to a hearing required by section 6330(a)(1). Contrary to petitioners' erroneous argument, section 6330(a)(1) precluded respondent from being able to "seize and continue to seize and sell [petitioners'] assets",[6] including Mr. Willhite's IRA, "30 days after" respondent sent petitioners the March 22, 2004 notice.[7]

---

[5](...continued)
forth in sec. 6330(f). Those exceptions include, inter alia, "a levy on a State to collect a Federal tax liability from a State tax refund". Sec. 6330(f)(2).

[6]See <u>supra</u> note 5 regarding "a levy on a State to collect a Federal tax liability from a State tax refund". Sec. 6330(f)(2). Even if respondent had levied certain State tax refunds of petitioners to which they were entitled, the exception in sec. 72(t)(2)(A)(vii) on which petitioners rely would not apply to the IRA distribution in question that they used to pay their respective unpaid Federal tax liabilities for taxable years 2001, 2002, and 2003. As stated in the conference report that accompanied the enactment into the Code of the exception in sec. 72(t)(2)(A)(vii),

> The exception applies only if the [qualified retirement] plan or IRA is levied; it does not apply, for example, if the taxpayer withdraws funds to pay taxes in the absence of a levy [on such a plan or IRA], in order to release a levy on other interests [of the taxpayer].

H. Conf. Rept. 105-599, at 282 (1998), 1998-3 C.B. 755, 1036.

[7]After the Commissioner issues the notice required by sec. 6330(a)(1) to a taxpayer the taxpayer has the right to request a hearing before the Commissioner's Appeals Office (Appeals Office). See sec. 6330(b). Where such a hearing is held, the taxpayer "may raise at the hearing any relevant issue relating to
(continued...)

We turn finally to petitioners' reliance on <u>Larotonda v. Commissioner</u>, <u>supra</u>, and <u>Murillo v. Commissioner</u>, <u>supra</u>. We find those cases to be materially distinguishable from the present case and petitioners' reliance on them to be misplaced. In the present case, Mr. Willhite initiated, received, and controlled the 2004 IRA distribution that he received during 2004, $57,172.31 of which petitioners used to pay their unpaid Federal tax liabilities for taxable years 2001, 2002, and 2003, respectively. In contrast, as we stated in <u>Czepiel v. Commissioner</u>, T.C. Memo. 1999-289, affd. 86 AFTR 2d 2000-7304, 2001-1 USTC par. 50,134 (1st Cir. 2000):

> In <u>Larotonda v. Commissioner</u>, <u>supra</u>, the Commissioner's levy triggered the taxable event without any active participation by the taxpayer, and we were concerned that Congress did not intend the additional tax under former section 72(m)(5) to apply to such a situation. In <u>Murillo v. Commissioner</u>, <u>supra</u>, the decree of forfeiture that forfeited to the United States, inter alia, the taxpayer's IRA accounts "not only triggered but was itself the event which constituted the IRA withdrawals." * * *[8]

---

[7](...continued)
the unpaid tax or the proposed levy, including * * * offers of collection alternatives". Sec. 6330(c)(2)(A). If the Appeals Office were to determine to sustain the proposed collection action, the taxpayer would have the right to appeal that determination to this Court. See sec. 6330(d)(1).

[8]For a fuller discussion of <u>Larotonda v. Commissioner</u>, 89 T.C. 287 (1987), and <u>Murillo v. Commissioner</u>, T.C. Memo. 1998-13, affd. without published opinion on other issues 166 F.3d 1201 (2d Cir. 1998), see <u>Czepiel v. Commissioner</u>, T.C. Memo. 1999-289, affd. 86 AFTR 2d 2000-7304, 2001-1 USTC par. 50,134 (1st Cir. 2000).

On the record before us, we find that petitioners have failed to establish that the 2004 IRA distribution in question is not subject to the 10-percent additional tax.  On that record, we sustain respondent's determination in the 2004 notice.

We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered

for respondent.