T.C. Memo. 2016-37

UNITED STATES TAX COURT

SYED NAVAID, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 328-13.                            Filed March 3, 2016.

<u>James O. Creech, III</u> and <u>Jane Zhao</u>, for petitioner.

<u>Alexander R. Roche</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Respondent determined a deficiency in Federal income tax

of $36,979 and an accuracy-related penalty under section 6662(a)[1] of $7,396 for

petitioner's 2010 taxable year.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]   In a stipulation of settled issues the parties settled all of the deficiency issues before trial.[2]  After concessions, the remaining issue is whether petitioner is liable for the section 6662(a) accuracy-related penalty for 2010.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.  Petitioner resided in California when he timely filed his petition.

Petitioner was born and raised in Pakistan, and his native language is Hindi.  While living in Pakistan petitioner went to pharmacy school where he received a bachelor's degree.  Petitioner emigrated from Pakistan 33 years ago to the United States and enrolled in a local literacy program as a nonnative English speaker.  In 1984 petitioner received his pharmaceutical license from the State of Illinois.

Petitioner had no background and had never taken any courses in finance or tax return preparation.  For every year since moving to the United States petitioner has filed a tax return with the Internal Revenue Service (IRS).  Petitioner has never prepared his own tax return and, instead, used a paid preparer.  Petitioner

---

[2]Petitioner conceded that he had taxable interest income of $13, taxable retirement income of $109,154, and taxable dividend income of $284 for 2010.  Respondent conceded that even though petitioner was under the age of 59-1/2 he is not liable for the sec. 72(t) 10% additional tax on early distributions from his retirement account for 2010.

**[*3]** recognized that he should be careful with his tax documents and recordkeeping, and he tried to provide all of his tax documents to his paid preparer. Additionally, petitioner tried to keep his tax records and IRS paperwork for 10 years.

In 2001 petitioner ran a small pharmacy in addition to working at a Federal Government hospital. On April 19, 2001, he was charged, along with two other codefendants, with diversion of pharmaceuticals from the Department of Veterans Affairs, and subsequently he was indicted. On October 13, 2006, petitioner entered a plea of guilty to one count of conspiracy to defraud the United States under 18 U.S.C. sec. 371 (2006). United States v. Navaid, No. 06-CR-56-1 (N.D. Ill. Oct. 13, 2006) (sentencing order). Petitioner was sentenced to 18 months in prison and three years of supervised release. In addition, petitioner was jointly and severally liable, along with his two codefendants, for restitution of $670,000 to be paid for the benefit of the Department of Veterans Affairs. By District Court order, restitution was payable to the Clerk of the Court, U.S. District Court (Clerk of the District Court). The restitution judgment was entered on October 13, 2006. Pursuant to 18 U.S.C. sec. 3613(c) (2006), upon the entry of the judgment a lien arose on all of petitioner's property and rights to property.

[*4] A citation to discover assets directed to Charter One Bank/Citizens Bank was served on December 5, 2006, with statutory notice to petitioner. The citation to discover assets ordered Charter One Bank/Citizens Bank to "produce all documents and things in your possession or control concerning * * * as they relate to the property, income, or assets of the judgment debtor [petitioner]".

On December 12, 2006, pursuant to the citation to discover assets, Charter One Bank/Citizens Bank filed an answer stating that, at the time the citation was served, Charter One Bank/Citizens Bank had no record of petitioner's accounts, which he had previously disclosed as an individual retirement account (IRA) containing approximately $100,000. Upon receiving Charter One Bank/Citizens Bank's answer reflecting no record of accounts, petitioner was ordered to account for the transfer or dissipation of these funds. Petitioner produced account statements reflecting an IRA at Charter One Bank/Citizens Bank.

In spring 2008 petitioner was released from prison. On July 3, 2008, Charter One Bank/Citizens Bank filed an amended answer stating that, at the time the citation was served, Charter One Bank/Citizens Bank had record of an IRA certificate of deposit of $117,786 belonging to petitioner.

On July 25, 2008, the U.S. District Court for the Northern District of Illinois issued an "Order Imposing Lien" stating that "[d]ue to Navaid's concerns about

[*5] the joint and several liability of his yet-to-be sentenced co-defendants, the parties have agreed to extend the citation lien against Navaid's IRA at Charter One Bank/Citizens Bank until further court order."

By March 31, 2010, petitioner had paid $115,876 of the joint and several liability and his codefendants had paid $99,364, leaving a balance of $454,760 owing on the restitution.  On April 5, 2010, the United States filed a "Renewed Motion for Turnover Orders" with the District Court having identified additional assets of the codefendants.  The motion identified petitioner's IRA certificate of deposit investment and sought to have Charter One Bank/Citizens Bank turn over the IRA certificate of deposit.[3]

On April 12, 2010, the U.S. District Court entered a "Turnover Order" naming "Third Party Citation Respondent", Charter One Bank/Citizens Bank.  In its "Turnover Order" the U.S. District Court for the Northern District of Illinois ordered:

> Respondent Charter One Bank/Citizens Bank shall liquidate Navaid's IRA certificate of deposit and submit its full liquidated value, approximately $117,786, to the Clerk of the Court.  This court-ordered distribution shall not be subject to any additional tax or penalty.  *Murillo v. Commissioner of Internal Revenue*, 1998 WL

---

[3]Additional "Third Party Citation Respondents", Metropolitan Life Insurance Co. and Harris Direct n.k.a. E*Trade Securities, were notified to liquidate assets identified as petitioner's.

**[*6]** 6462 (No. 18163-96, U.S. Tax Ct., Jan 12, 1998) (involuntary distributions are not subject to 10% additional tax on early distributions from IRAs).

In 2011 RBS Citizens Bank[4] on behalf of the "Third Party Citation Respondent" reported to the Commissioner that it issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for the IRA distribution of $109,154.

Petitioner was never notified of the IRA liquidation or distribution by either the bank or the District Court. Petitioner first learned of the IRA liquidation when he received a statement from his bank and saw a zero balance in his IRA. After receiving the statement petitioner immediately went to the bank to try to find out what had happened. Petitioner spoke with a manager at the bank who said he would look into the matter. Petitioner kept going back to the bank and kept calling to see what had happened with his account, but no one from the bank, including a bank manager, gave him a response to his inquiries or any documents showing whether the funds had been paid to the Clerk of the District Court according to the previous "Turnover Order" instructions. Eventually, petitioner

---

[4]The stipulation of facts states that RBS Citizens Bank reported to respondent that it had issued a Form 1099-R to petitioner. In 1988 Citizens Bank was acquired by the Royal Bank of Scotland Group (RBS). On August 31, 2004, Charter One Bank was acquired by RBS Citizens Bank. No tax withholding was reported on Form 1099-R.

[*7] inferred that the turnover had been completed. No evidence in the record shows that the bank attempted to mail petitioner a Form 1099-R or that the bank actually mailed petitioner a Form 1099-R. The only document in the record is a computer-generated form from RBS Citizens Bank sent to the IRS. Additionally, the District Court records do not reflect either a notice to petitioner of received funds or confirmation that the proceeds were applied to the restitution account.

Petitioner hired a paid preparer for his 2010 tax return. Petitioner provided his paid preparer with his business receipts and Forms 1099-MISC, Miscellaneous Income, for his pharmacy activities but did not provide a copy of the "Turnover Order". Although the following Forms 1099 were reported to the IRS, the income was not included on the income tax return: a Form 1099-R reporting the $109,154 IRA distribution from RBS Citizens Bank; a Form 1099-INT, Interest Income, reporting interest income of $13 from EMC Mortgage Corp.; a Form 1099-DIV, Dividends and Distributions, reporting taxable dividend income of $159 from Metropolitan Life Insurance Co.; and a Form 1099-DIV reporting taxable dividend income of $125 from E*Trade Securities.

On October 1, 2012, respondent issued a notice of deficiency to petitioner determining that petitioner did not report $13 of interest income, $284 of taxable

[*8] dividend income,[5] and $109,154 of taxable retirement distributions. The notice of deficiency determined that petitioner was liable for the section 72(t) 10% additional tax. Respondent now concedes that petitioner is not liable for the section 72(t) 10% additional tax under the "Turnover Order" and seeks a reduced deficiency and a reduced accuracy-related penalty.

On December 16, 2013, petitioner contacted the Center for Economic Progress Low-Income Taxpayer Clinic (clinic) to discuss this tax case. After consultation with the clinic attorneys, petitioner understood that he should have included the IRA distribution on his 2010 tax return. The parties memorialized in their stipulation of settled issues that petitioner concedes the underlying income tax deficiency, but the accuracy-related penalty remains at issue.

## OPINION

Section 6662(a) and (b)(1) and (2) authorizes a 20% penalty on the portion of an underpayment of income tax attributable to: (1) negligence or disregard of rules or regulations, or (2) a substantial understatement of income tax. Under section 7491(c), the Commissioner bears the burden of production with regard to penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the

---

[5]The Form 1099-INT and Forms 1099-DIV for interest income and taxable dividend income were not included in the record but were reflected on the notice of deficiency attached to the petition.

**[\*9]** Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of, for example, reasonable cause or substantial authority. See Rule 142(a); Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), aff'g T.C. Memo. 1982-337; Higbee v. Commissioner, 116 T.C. at 446-447.

Substantial Understatement

Section 6662(a) and (b)(2) imposes a penalty of 20% on the portion of the underpayment of tax attributable to a substantial understatement of income tax. Section 6662(d)(1)(A) defines a "substantial understatement of income tax" as an understatement in an amount exceeding, as relevant here, $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs. The term "understatement" is defined as the excess of the amount of tax required to be shown on the return over the amount shown reduced by any rebate. Sec. 6662(d)(2)(A). Section 6662(d)(2)(B) reduces the amount of an understatement by the portion of the understatement for which: (1) there is substantial authority for the taxpayer's tax treatment of the item, or (2) there is adequate disclosure in the return of the relevant facts affecting the item's tax treatment and there is a reasonable basis for the taxpayer's treatment of the item.

**[\*10]** Here, the understatement of income tax is greater than $5,000. Thus, the understatement is substantial for purposes of the section 6662(a) accuracy-related penalty. The Court concludes that respondent met his burden of production in showing that petitioner substantially understated his Federal income tax for 2010. That being so, it is petitioner's burden to establish that the imposition of the penalty is not appropriate. See Higbee v. Commissioner, 116 T.C. at 447; see also Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner's position with respect to the IRA and the other unreported income is not supported by any substantial authority and was not adequately disclosed.

No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing that the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). Reasonable cause requires that the taxpayer exercised ordinary business care and prudence as to the disputed item. United States v. Boyle, 469 U.S. 241, 246 (1985). The term "good faith" has no precise definition but means, among other things, (1) an honest belief and (2) the intent to perform all lawful obligations. Sampson v. Commissioner, T.C. Memo. 2013-212, at \*18. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent

[*11] facts and circumstances. Higbee v. Commissioner, 116 T.C. at 448;

Sampson v. Commissioner, at *18.

Generally, the most important factor is the extent of the taxpayer's effort to

assess the taxpayer's proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.;

see also Remy v. Commissioner, T.C. Memo. 1997-72. Circumstances that may

also indicate reasonable cause and good faith include an honest misunderstanding

of fact or law that is reasonable in light of all of the facts and circumstances,

including the experience, knowledge, and education of the taxpayer. Higbee v.

Commissioner, 116 T.C. at 449; Sampson v. Commissioner, T.C. Memo. 2013-

212; Remy v. Commissioner, T.C. Memo. 1997-72; sec. 1.6664-4(b)(1), Income

Tax Regs.

Respondent contends that petitioner did not exercise ordinary care and

prudence in attempting to determine his proper tax liability for 2010. Respondent

asserts that petitioner was aware of the "Turnover Order", knew that his IRA had

in fact been liquidated, and still made no attempt to determine whether the amount

was taxable. According to respondent, petitioner has a professional career and is

highly educated. Consequently, his experience, knowledge, sophistication, and

education show that it would be reasonable for him to realize that the "Turnover

Order" had tax implications for the IRA distribution.

**[\*12]** Furthermore, respondent asserts that petitioner did not act in good faith because he failed to provide all the relevant information to his paid preparer. In order to rely on the advice provided by the taxpayer's return preparer, the taxpayer must "disclose a fact that it knows, or reasonably should know, to be relevant to the proper tax treatment of an item." Sec. 1.6664-4(c)(1)(i), Income Tax Regs. Moreover, respondent asserts that petitioner unilaterally decided that the "Turnover Order" and the IRA distribution were not items he needed to disclose to his paid preparer because petitioner believed his criminal history was too personal and too embarrassing to disclose to his paid preparer. Respondent contends that petitioner also made no attempt of his own to determine whether the IRA distribution was taxable after learning that his IRA had been liquidated.

Petitioner, on the other hand, asserts he qualifies for the section 6664(c) exception and should not be liable for the accuracy-related penalty based on a substantial understatement of income tax. Petitioner testified that he did not show the "Turnover Order" to his paid preparer because he did not believe that it was a tax document and he did not want to show an embarrassing unrelated document disclosing his criminal history. At the time he filed his tax return, petitioner did not realize that there would be any tax implications with respect to the court-ordered seizure of the IRA because he did not receive any monetary distribution

**[*13]** from the liquidation of the IRA certificate of deposit. Additionally, the bank officers were never able to explain how the account was liquidated; petitioner never received a Form 1099-R from the bank, nor did he ever receive notice from the District Court that the funds had been applied to the restitution account.

Finally, petitioner asserts that he qualifies for the reasonable cause exception because he had an honest misunderstanding of the tax law at the time he filed his 2010 tax return. He asserts that it was the lack of knowledge, and not the lack of good faith, that resulted in the omission of the IRA distribution from his tax return. Petitioner claims that this honest misunderstanding of the tax law, in addition to his history of tax compliance, good recordkeeping habits, and hiring a paid preparer, shows that he acted reasonably and in good faith.

Respondent asserts that a reasonable and ordinarily prudent person would recognize from the "plain language" of the "Turnover Order" that there was a potential tax impact from the court-ordered IRA distribution. However, the wording in the "Turnover Order" is unclear and does not place an ordinary taxpayer on notice of a specific tax obligation. On its face, the sentence "[t]his court-ordered distribution shall not be subject to any additional tax or penalty" is ambiguous. A precise application of <u>Murillo v. Commissioner</u>, T.C. Memo. 1998-13, 1998 WL 6462, at *1, <u>aff'd without published opinion</u>, 166 F.3d 1201 (2d Cir.

**[\*14]** 1998), would state that when a defendant forfeits funds in his retirement plan account as part of the terms of a criminal plea, the distribution shall not be subject to the 10% additional tax under section 72(t). See United States v. Novak, 476 F.3d 1041, 1063 n.25 (9th Cir. 2007). Accordingly, the Court finds that petitioner's interpretation of the "Turnover Order" was not unreasonable or negligence per se.

Furthermore, it should be noted that the IRS itself made a mistake in regard to the tax treatment of the "Turnover Order". Initially the IRS determined that petitioner was liable for a section 72(t) 10% additional tax on his court-ordered IRA distribution, and only later conceded that petitioner should not have been liable for the section 72(t) additional tax as the Government had seized his IRA. The IRS' actions show that neither the "Turnover Order" nor an accurate application of Murillo was overwhelmingly obvious. The Court finds that petitioner reasonably believed that the "Turnover Order" was not a tax document.

However, the Court finds that petitioner did not act with reasonable cause and in good faith because he never took any additional steps to determine whether the court-ordered IRA distribution was taxable when he found out his IRA of $109,154 had been liquidated. Petitioner testified that when he received a bank statement showing a zero balance in his IRA, he immediately went to the bank to

[*15] ask about the transaction history. A bank manager investigated the IRA but did not provide petitioner any documentation reflecting the IRA's ultimate fate. The bank never gave him a response to his inquiries nor any documents showing that the funds had been paid to the Clerk of the District Court according to the "Turnover Order" instructions. Eventually, petitioner inferred that the turnover from the bank had probably been completed although the District Court did not acknowledge receipt of any of the money. Additionally, petitioner also testified that he did not receive a Form 1099-R from the bank and did not receive any documents from the IRS regarding the seizure of his IRA.

That said, petitioner should have disclosed the IRA liquidation even if he did not understand the tax ramifications. Even though petitioner did not receive a Form 1099-R, his nonreceipt of any Form 1099 did not convert a taxable item to a nontaxable item. See Vaughn v. Commissioner, T.C. Memo. 1992-317, aff'd without published opinion, 15 F.3d 1095 (9th Cir. 1993). The liquidated IRA itself was enough to put petitioner on notice that he had a duty to report the information on his tax return. Additionally, petitioner did not act with reasonable cause and in good faith when he failed to inform his paid preparer about his dividend income and his interest income for 2010. Therefore, the Court finds that on the basis of these facts, although petitioner did not act negligently per se, he did

**[\*16]** not act with reasonable cause and good faith when he did not adequately disclose in the return the relevant facts affecting the item's tax treatment. Accordingly, the Court will impose an accuracy-related penalty for an underpayment due to a substantial understatement of income tax for 2010.

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.