T.C. Memo. 2008-262

UNITED STATES TAX COURT

JOSEPH CARIONE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23559-06.          Filed November 24, 2008.

<u>James O. Druker</u>, for petitioner.

<u>Theresa G. McQueeney</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency of $88,914
in petitioner's 2000 Federal income tax.

The primary issue for decision is whether $388,301 in capital gain income received relating to a 1998 court-ordered criminal forfeiture sale of the assets of petitioner's S corporation is taxable to petitioner and if so whether it is taxable to petitioner in the year 2000.

Unless otherwise indicated, references to sections are to the Internal Revenue Code applicable to 2000, and references to Rules are to the Tax Court Rules of Practice and Procedure.

## Background

The facts have been stipulated and are so found. This case has been submitted under Rule 122. At the time of filing his petition, petitioner resided in New York.

During the 1990s petitioner was president, chief operating officer, and sole shareholder of Grand Carting, Inc. (Grand Carting), a New York S corporation which operated a commercial trash-hauling business on Long Island, New York.

In 1996 the United States indicted petitioner, Grand Carting, and other individuals in the Federal District Court for the Eastern District of New York (District Court) on charges of money laundering, conspiracy, and other crimes under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. secs. 1961-1968 (2006).

The indictment also asked for "RICO forfeiture" to the United States of assets which petitioner and the other named

defendants acquired or maintained in violation of RICO.  See 18 U.S.C. sec. 1963(a).

On September 10, 1996, the District Court issued a restraining order which, among other things, restrained petitioner, without approval of the court, from in any way alienating or selling the property and assets of Grand Carting other than in the ordinary course of business and appointed the U.S. Marshals Service to monitor Grand Carting and to ensure that its assets were not sold or wasted during the pendency of the restraining order.

During the pendency of the criminal charges, Grand Carting lost customers and revenue.  Accordingly, petitioner sought to sell the assets of Grand Carting, and petitioner negotiated for the sale of Grand Carting's assets to Waste Management of NY, Inc. (WMI), for $548,309.

On May 5, 1998, after obtaining permission from the District Court and pursuant to an order of the District Court, the sale of Grand Carting's assets to WMI occurred, and the $548,309 proceeds were deposited into an escrow account with the District Court to be withdrawn only upon further order of the court.

Considering only its tax bases in the assets sold, on the sale to WMI Grand Carting realized a net long-term capital gain of $388,301.

On February 12, 1999, as part of the plea agreements which were entered into in the criminal case, the District Court issued a Consent Order of Forfeiture signed by all of the defendants in the criminal case including Grand Carting and petitioner. As part of the Consent Order of Forfeiture the defendants in the criminal case, including Grand Carting and petitioner, agreed that they were jointly and severally liable to the United States for a forfeiture judgment of $6,900,721.

The February 12, 1999, Consent Order of Forfeiture provided that the $6.9 million forfeiture judgment was to be fully paid by the defendants by July 1, 2000, and that initially payments on the judgment were to be made by various lead defendants in the criminal case other than Grand Carting and petitioner. However, the forfeiture judgment also provided that Grand Carting's assets that had been placed in escrow were subject to forfeiture to pay for any balance due on the forfeiture judgment as of the July 1, 2000, payment deadline. The language of the Consent Order of Forfeiture reads as follows:

> In the event that the Forfeiture Judgment is not fully paid by July 1, 2000, the government may in its sole discretion sell, and/or forfeit and sell, all property restrained in this matter, including the proceeds of the sale of Grand Carting, which shall be held in escrow until the Forfeiture is satisfied, or until July 1, 2000, whichever is earlier. The funds realized by the sale of these properties, after payment of all reasonable costs, expenses associated with the sale, shall be forfeited to the government to the extent that the Forfeiture Judgment remains unsatisfied, and the

funds shall be deposited into the Asset Forfeiture Fund and credited towards the Forfeiture Judgment.

On July 1, 2000, the balance unpaid on the forfeiture judgment was over $2 million, and on August 9, 2000, the District Court ordered that the $548,309 proceeds from the sale of Grand Carting's assets which were in the escrow account be transferred into the Asset Forfeiture Fund and be applied as further payment on the forfeiture judgment.

On August 9, 2000, the District Court issued an order which referenced the July 1, 2000, payment deadline and which ordered that the proceeds be released from escrow, be paid into the Asset Forfeiture Fund, and be applied to the forfeiture judgment.

On January 16, 2001, $560,689 in the escrow account, plus accrued interest of $63,292, was actually disbursed from the escrow account and transferred into the Asset Forfeiture Fund.

Tax Returns

The $388,301 net long-term capital gain realized on the sale of Grand Carting's assets was reported on its 1998 Federal corporate income tax return and on an attached Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., indicating petitioner as the sole shareholder.

In October 1999 petitioner, a cash basis taxpayer, filed his 1998 individual Federal income tax return and reported thereon

the $388,301 net long-term capital gain realized on the sale of Grand Carting's assets as passthrough income to petitioner.

On September 18, 2000, petitioner paid to respondent the $49,400 in Federal income taxes attributable to the $388,301 reported capital gain on the sale of Grand Carting's assets.

On November 2, 2000, petitioner filed with respondent an amended 1998 Federal income tax return on which petitioner claimed that the assets of Grand Carting were not sold in 1998 and that the proceeds relating to the sale of the assets should be taxed to him, if ever, in 2000.

On or about September 6, 2002, petitioner filed a second amended 1998 Federal income tax return on which petitioner claimed further that the $388,301 proceeds should not be taxable to him in 1998 because the proceeds were directly forfeited to the U.S. Government and he never had dominion and control over them. Petitioner's two amended tax returns include the following statement: "Taxpayer's accountant incorrectly included a capital gain from the sale of [Grand Carting], whereas in fact, this corporation was not sold in 1998. The taxable event, if any, should occur in the year 2000."

For 2000, Grand Carting did not file a Federal corporate income tax return.

On October 15, 2001, petitioner filed his 2000 Federal income tax return and reported thereon total income of $44,165,

which did not include any portion of the $388,301 long-term capital gain relating to the sale of Grand Carting's assets.

No disclosure was made on petitioner's 2000 Federal income tax return relating to the sale of Grand Carting's assets or the $388,301 proceeds.

On their 1998, 1999, 2000, and 2001 Federal income tax returns, neither petitioner nor Grand Carting reported the $63,292 in interest income that accrued over the course of those years on the funds being held in escrow, which interest in January of 2001 was transferred to the Asset Forfeiture Fund.

District Court Refund Suit

On the basis of respondent's failure to allow petitioner the refund that was claimed in petitioner's two amended 1998 Federal income tax returns, petitioner timely filed in the District Court for the Eastern District of New York a suit for refund alleging overpayment of his 1998 Federal income taxes. See Carione v. United States, 368 F. Supp. 2d 186 (E.D.N.Y. 2005), motion for reconsideration denied, 368 F. Supp. 2d 196 (E.D.N.Y. 2005), appeal dismissed per unreported stipulation (2d Cir. Sept. 19, 2005).

In the District Court litigation, petitioner argued that because the proceeds were subject to the forfeiture order and were placed directly in escrow, he neither received nor had control over the proceeds. Accordingly, petitioner claimed that

he should not be taxed thereon--not in 1998 when Grand Carting's assets were sold and not in 2000 when the proceeds were ordered by the District Court to be withdrawn from escrow and paid on the forfeiture judgment.

In the District Court litigation, the Government argued that the proceeds should be taxed to petitioner in 1998 because petitioner in 1998 negotiated the sale of Grand Carting's assets, because the sale of the assets actually occurred in 1998, and because petitioner knew that the proceeds of the sale would be placed in escrow and eventually likely used to satisfy the forfeiture judgment.

On March 17, 2005, the District Court in Carione ruled in petitioner's favor and held that the proceeds were not taxable to petitioner in 1998; rather, the District Court explained, the proceeds should be taxed to petitioner in August 2000 when the proceeds were ordered to be released from the bona fide and arm's-length escrow over which the District Court, not petitioner, had control and in the year in which the proceeds effectively were used to satisfy petitioner's forfeiture judgment.

An appeal from the District Court's opinion was dismissed pursuant to the parties' stipulation, and on September 19, 2005, the District Court's judgment in Carione became final.

On September 7, 2006, respondent mailed to petitioner a notice of deficiency for 2000 charging petitioner in that year with the $388,301 additional long-term capital gain income relating to the sale and use of the $388,301 Grand Carting proceeds to pay petitioner's obligation on the forfeiture judgment.

One day before the scheduled trial herein, respondent filed a motion for leave to file a second amended answer seeking to charge petitioner with $63,291 in interest income that had accrued on the $388,301 Grand Carting proceeds while the proceeds were held in the escrow account.

## Discussion

Under section 61, all income from whatever source derived is included in gross income. Under section 61(a)(2) and (3), gains derived from business and from dealings in property are specifically included in gross income.

Under section 1366, because petitioner was the sole shareholder the gains and losses of Grand Carting pass through to petitioner, and the possibility that the assets of Grand Carting may have been earned through illegal activities does not alter the taxability of gains relating thereto. See James v. United States, 366 U.S. 213, 218 (1961).

It is clear that the proceeds realized on the sale of Grand Carting's assets generally would be taxable to petitioner as the 100-percent owner of the stock of Grand Carting.

Petitioner, however, argues that the $388,301 Grand Carting proceeds should not be charged to him as income even in 2000 because the proceeds were placed directly into escrow and were always subject to the District Court's control, not petitioner's.

Petitioner further emphasizes that from the beginning of the forfeiture proceeding his liability under the $6.9 million forfeiture judgment was not personal, was to be paid solely from, and was limited or capped by the amount of, the proceeds realized on a sale of the Grand Carting assets.

We note that if the proceeds are taxable to petitioner in 2000, there clearly was an omission of more than 25 percent of gross income on petitioner's 2000 Federal income tax return, the 6-year period of limitations would apply, and respondent's notice of deficiency to petitioner for 2000 would be timely.[1]

The District Court in Carione v. United States, supra at 194, explained with regard to the taxability of the proceeds to petitioner as follows:

---

[1] Respondent argues in the alternative that if the assessment period of limitations with regard to petitioner's Federal income taxes for 2000 is not open under sec. 6501(e)(1)(A), then the assessment period of limitations for 2000 would be open under the mitigation provisions of secs. 1311 to 1314.

Courts should construe "income" liberally, "in recognition of the intention of Congress to tax all gains except those specifically exempted. * * * [James v. United States, 366 U.S. 213, 219 (1961).] A further general principle of taxation is that "an individual should be taxed on any economic benefit conferred upon him, to the extent that the benefit has an ascertainable fair market value." The above quotes suggest, and the various cases demonstrate, that a taxpayer does not gain income only through his dominion and control over something; a taxpayer also realizes taxable income where he "obtains the fruition of the economic gain which has already accrued to him." Comm'r v. Fender Sales, Inc., 338 F.2d 924, 928 (9th Cir. 1964).

In conformity with these principles, the Supreme Court has long held that "discharge by a third person of an obligation to [the taxpayer] is equivalent to receipt by the person taxed." Old Colony Trust Co. v. Comm'r, 279 U.S. 716, 729 * * * (1929) (employer's payment of employee's taxes constitutes taxable income). "Income is not any the less taxable income of the taxpayer because by his command it is paid directly to another in performance of the taxpayer's obligation to that other." [United States v.]Joliet & C.R. Co., 315 U.S. * * * [44, 49 (1942)] (quoting Raybestos-Manhattan, Inc. v. U.S., 296 U.S. 60, 64 * * * (1935)). Where a taxpayer's property interest, even one that was never in his control or possession, is used to satisfy his outstanding obligation to the Government, the corresponding reduction in the amount of that obligation constitutes an "economic benefit," and is taxable as income. See Koehn v. Comer, No. 97 Civ. 76328, 2003 WL 1735496, at *1 (E.D. Mich. Feb. 19, 2003).

With regard to whether the capital gain should be included in petitioner's income in 1998, however, the District Court went on to explain as follows:

Where a taxpayer's would-be income is deposited in an escrow account beyond that taxpayer's reach, it generally should not be included in his taxable income. See, e.g., C.I.R. v. Indianapolis Power & Light Co., 493 U.S. 203, 211 n.7 * * * (1990) (acknowledging Commissioner's concession that security deposits held by power company "would not be taxable if they were placed in escrow"); Ware v. C.I.R, 906 F.2d 62, 65 n.2 (2d Cir. 1990) (fee not actually or constructively received by firm for tax purposes so long as held in escrow beyond firm's control); and Reed v. Comm'r, 723 F.2d 138, 149 (1st Cir. 1983) (taxpayer not required to report income held in bona fide escrow for payment in later tax period and from which no other present beneficial interest is derived). [Carione v. United States, 368 F. Supp. 2d at 192-193.]

And the District Court concluded that--

(1) the sale of Grand Carting's assets produced taxable income to Grand Carting, (2) and thus to Carione, but (3) only in August 2000, when such proceeds were released from escrow and used to satisfy * * * [petitioner's] prior forfeiture judgment. [Id.]

We generally agree with the analysis of the District Court as to the applicable tax law. We also agree with the District Court's dicta that petitioner has taxable income for 2000 from the proceeds of the sale of Grand Carting's assets.[2]

For Federal income tax purposes, a gain is treated as realized when the taxpayer receives the benefit of the gain, which may occur even if the proceeds representing the gain are not paid directly to the taxpayer. Helvering v. Horst, 311 U.S.

---

[2] Respondent acknowledges that the doctrine of collateral estoppel does not apply to the resolution of this issue.

112, 115 (1940).  The proceeds from the sale of Grand Carting's assets were not paid to petitioner in 1998, and because they were escrowed petitioner did not receive the benefit of the proceeds until 2000 when they were ordered to be released from escrow and used to discharge petitioner's debt under the forfeiture judgment.

When the defendants in the criminal case (including petitioner) failed to satisfy the July 1, 2000, forfeiture payment deadline and the escrowed proceeds were ordered released by the District Court to be applied to the forfeiture fund (i.e., in August 2000), petitioner received the economic benefit of the 1998 $388,301 net capital gain and of the $63,292 interest income.  The August 9, 2000, District Court order memorialized the release of the funds from escrow and resulted in a discharge of petitioner's forfeiture obligation.

As sole shareholder of the S corporation, petitioner is charged with the income thereof and is to be taxed thereon on August 9, 2000, when he received the economic benefit of the proceeds upon entry of the order directing application thereof to his obligation under the criminal forfeiture.

We note that although the escrowed funds were physically transferred out of the escrow in January 2001, the benefit of the escrowed funds shifted to or was realized by petitioner on August 9, 2000, the date of the District Court's order.  As of that date

petitioner's liability under the forfeiture judgment was satisfied and the various parties' entitlement to the funds was settled and no longer in dispute.

Because the unreported $388,301 long-term capital gain taxable to petitioner in 2000 is in excess of 25 percent of the reported 2000 gross income of $44,165, the 6-year period of limitations under section 6501(e)(1)(A) applies and respondent's September 7, 2006, notice of deficiency is timely.

On the basis of well-established tax law we conclude that the $388,301 proceeds are taxable to petitioner in 2000. As the Supreme Court has held, the "discharge by a third person of an obligation to * * * [the taxpayer] is equivalent to receipt by the person taxed." Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929) (employer's payment of employee's taxes constitutes taxable income to the employee).

Respondent also argues that under the doctrine of judicial estoppel petitioner should be barred from challenging the taxability to him in 2000 of the forfeiture funds. Judicial estoppel is an equitable doctrine that prevents a party in a subsequent judicial proceeding from asserting a position contradictory to a position that the party asserted and that a court adopted in a prior judicial proceeding.

We have explained the proper application of judicial estoppel as follows:

> We hold that the doctrine of judicial estoppel is available in the Tax Court to be used in appropriate cases, such as the one before us, to prevent parties from taking positions that are inconsistent with those previously asserted by the parties and accepted by courts and that would result in inappropriate and prejudicial consequences to the courts. [Huddleston v. Commissioner, 100 T.C. 17, 28-29 (1993).]

In view of petitioner's affirmative contention in the prior refund suit that the forfeiture proceeds should be taxable to petitioner, if at all, in 2000, and the District Court's agreement therewith, and in view of our holding that petitioner is taxable on the proceeds, petitioner is judicially estopped from denying the taxability thereof in 2000.

We conclude that the doctrine of judicial estoppel also applies here to bar petitioner from arguing that he is not taxable on the $388,301 proceeds in 2000.

Petitioner argues that in his District Court refund suit the Government should have filed a counterclaim raising an alternative issue as to the taxability to petitioner of the forfeiture proceeds in 2000. Having failed to do so, petitioner argues respondent now is precluded from asking this Court to tax him in 2000 on the proceeds. Petitioner states that respondent is engaged in "serial litigation" (i.e., "trying to tax the same item of income in different years, particularly where the issue was squarely raised in the first lawsuit.").

We disagree.  Each taxable year stands on its own. Respondent's position that petitioner should be taxed on the forfeiture proceeds in 2000 was not a required counterclaim in petitioner's tax refund suit for 1998.  See Fed. R. Civ. P. 13(a) and (b); Flora v. United States, 362 U.S. 145, 166 (1960); Hemmings v. Commissioner, 104 T.C. 221, 234-235 (1995).

Petitioner argues that under the duty-of-consistency doctrine respondent should not be allowed to take a position in this case inconsistent with the position respondent took in the District Court litigation.  To the contrary, petitioner never relied on respondent's adjustment that the forfeiture funds should be taxed to petitioner in 1998, and petitioner's own amended 1998 Federal income tax return stated that the funds should be taxed in 2000, if at all.  Further, the District Court rejected respondent's position as to the year 1998.  See Cluck v. Commissioner, 105 T.C. 324, 332 (1995), for an explanation of the proper application of the duty-of-consistency doctrine.

Lastly, citing Dept. of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767 (1994), and United States v. Bajakajian, 524 U.S. 321 (1998), petitioner argues that taxing him on the $388,301 proceeds would violate the double jeopardy clause of the Constitution.

In Kurth Ranch, a tax imposed upon the possession and storage of illegal substances constituted an additional penalty

on those convicted of selling the substances and violated the defendant's rights under the Fifth Amendment's Double Jeopardy Clause. Here, petitioner claims that because the forfeiture of the proceeds occurred after the guilty pleas were entered, the forfeiture constituted an impermissible additional punishment of petitioner and unconstitutional double jeopardy.

Among other reasons for rejecting petitioner's double jeopardy argument, we note that petitioner's forfeiture obligation was established not after but simultaneously with the guilty pleas that were entered and was imposed as part of the criminal sentencing relating to the guilty pleas.

We have considered and we reject all other arguments made by petitioner as to the nontaxability of the $388,301 proceeds.

Petitioner objects to respondent's attempt by motion filed just before the scheduled trial herein to raise an issue as to the taxability to him of the $63,291 in interest income which had accrued on the $388,301 Grand Carting proceeds while the proceeds were in the escrow account. Petitioner notes that respondent was fully aware of this interest income during discovery that occurred in the District Court refund suit and that respondent's failure herein to raise the taxability thereof by motion and on a timely basis should be denied. We agree. See Rule 41(a).

Respondent has provided no adequate explanation as to why the taxability of the interest income was not raised earlier than

the eve of the scheduled trial herein.  We will deny respondent's untimely motion to amend his answer to charge petitioner with an additional $63,291 in interest income.

<u>An appropriate order and decision will be entered</u>.