# United States Tax Court

T.C. Memo. 2024-16

LONNIE WAYNE HUBBARD,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4464-21.                               Filed February 6, 2024.

————

Lonnie Wayne Hubbard, pro se.

*Phillip A. Lipscomb*, for respondent.


MEMORANDUM OPINION

MARSHALL, *Judge*:  In a notice of deficiency dated November 16, 2020 (Notice), respondent determined a deficiency of $165,353, an addition to tax of $37,204 under section 6651(a)(1)[1] for failure to timely file, an addition to tax of $28,937 under section 6651(a)(2) for failure to timely pay, and an addition to tax of $3,959 under section 6654(a) for failure to make estimated tax payments for petitioner's 2017 tax year. Respondent filed a Motion for Summary Judgment (Motion) with supporting exhibits, wherein he requests that a decision be entered in this case sustaining most of the proposed deficiency, as well as the

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  Except where otherwise indicated, all monetary amounts are rounded to the nearest dollar.

[*2] failure to file and failure to pay additions to tax for petitioner's 2017 tax year.[2]

The issues for decision are whether (1) petitioner is liable for tax with respect to a distribution from petitioner's individual retirement account (IRA) of $427,518 for the 2017 tax year and (2) whether petitioner is liable for additions to tax for failure to timely file and failure to timely pay. As discussed below, we conclude that petitioner constructively received the income at issue; and because there is no genuine dispute of material fact, we will grant respondent's Motion.

*Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits and Declarations attached thereto. Petitioner stated that his legal residence was in Kentucky, and petitioner was imprisoned in West Virginia, when the Petition was timely filed.

On December 3, 2015, petitioner was indicted, as modified by subsequent superseding indictments, for various crimes related to the distribution of controlled substances and listed chemicals in violation of 21 U.S.C. §§ 841(a)(1), 841(c)(2), 846, 856(a)(1), and 18 U.S.C. §§ 2, 1956(h), and 1957. Before his criminal conviction, petitioner was a pharmacist in Kentucky. The indictments included allegations with respect to petitioner's assets, including a T. Rowe Price Associates, Inc. employee IRA (T. Rowe Price IRA). In 2017, following a jury trial, petitioner was found guilty on most of the counts in the superseding indictment, and petitioner's property listed in the indictment, including the IRA, was condemned and forfeited to the United States of America (USA). In addition to forfeiture of his assets, petitioner was sentenced to imprisonment for a term of 360 months, three years of supervised release, and a criminal monetary penalty of $7,100. Petitioner was incarcerated on February 16, 2017, and remained incarcerated during all relevant times.

T. Rowe Price Trust Company Retirement Operations Group (T. Rowe Price) issued petitioner Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for the 2017 tax year, reporting an early

---

[2] Respondent has conceded the 10% additional tax on an early distribution from a qualified retirement plan under section 72(t) and the addition to tax under section 6654 for failure to pay proper estimated tax.

[*3] taxable distribution of $427,518 from petitioner's T. Rowe Price IRA. Petitioner did not file a federal income tax return for the 2017 tax year. In connection with his not having filed a federal income tax return, petitioner did not report the $427,518, which was forfeited directly to the USA.

Petitioner made no payments with respect to his 2017 Federal income tax liability. Through respondent's Automated Substitute for Return Program, respondent prepared a substitute for return (SFR) as authorized by section 6020(b) for petitioner's 2017 tax year. On February 18, 2020, respondent sent petitioner a Notice 2566, informing him that, despite prior notices, respondent had not yet received Form 1040, U.S. Individual Income Tax Return, from petitioner for the 2017 tax year and warning him that respondent would assess tax should petitioner fail to file by March 19, 2020.

On November 16, 2020, respondent issued the Notice. Petitioner timely petitioned the Court on February 10, 2021, contesting the deficiency.

On March 3, 2023, respondent filed the Motion. On April 3, 2023, petitioner filed a Response objecting to respondent's Motion (Opposition). In his Opposition, petitioner agrees to the facts above but objects to the deficiency on the basis that the funds were transferred directly to the USA and that he never constructively received them. Petitioner also argues that he had reasonable cause for his failure to timely file a return and failure to timely pay the tax shown on the SFR because he was incarcerated on February 16, 2017, and his assets were criminally forfeited. He further asserts that he has earned no income since his indictment in December 2015 and was unable to pay the tax deficiency because of lack of funds. Additionally, he asserts that he did not receive the Form 1099–R from T. Rowe Price because his wife divorced him, did not communicate with him, and was not forwarding his mail. Petitioner's Opposition suggests, but does not directly state, that the Form 1099–R was sent to his ex-wife or that she received it and failed to forward it to him. Petitioner maintains that he lost most of his assets in his divorce, as his wife received their shared home, all possessions in the home, and the contents of their joint bank account. Finally, he emphasizes his history of paying his income tax from 2002 through 2015.

**[\*4]**                                   *Discussion*

I.      *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Under Rule 121(a), we may grant summary judgment when there is no genuine dispute as to any material facts and a decision may be rendered as a matter of law. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

The burden is on the moving party to demonstrate that no genuine dispute as to any material fact remains and that it is entitled to judgment as a matter of law. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74–75 (2001). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand*, 98 T.C. at 520. However, the nonmoving party may not rest upon the mere allegations or denials in its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *Sundstrand*, 98 T.C. at 520.

Petitioner contends that summary judgment is inappropriate because the parties disagree over whether petitioner constructively received the funds from his T. Rowe Price IRA. Constructive receipt, however, is a legal doctrine. *See Corliss v. Bowers*, 281 U.S. 376 (1930). The underlying facts, including that petitioner's T. Rowe Price IRA was forfeited to the USA and that petitioner never physically received the funds in the account, are agreed by the parties. Whether the doctrine of constructive receipt is properly applied to these facts is a question of law, not fact. As petitioner has raised no genuine dispute of material fact and the disagreements between the parties relate to disputes about the law rather than facts, summary adjudication is appropriate.

II.     *Deficiency*

A.      *Generally*

Section 61(a) provides that gross income means "all income from whatever source derived." This includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *James v. United States*, 366 U.S. 213, 219 (1961) (quoting *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955)). It is clear that pension

[*5] and IRA distributions (with exceptions not applicable here) are generally taxable as income. §§ 61(a)(10), 408(d)(1); *Cabirac v. Commissioner*, 120 T.C. 163, 167 (2003), *aff'd per curiam*, No. 03-3157, 2004 WL 7318960 (3d Cir. Feb. 10, 2004).

Gross income under section 61(a) also includes items of income that the taxpayer has constructively received. "Under the constructive receipt doctrine 'funds [or other property] which are subject to a taxpayer's unfettered command and which he is free to enjoy at his option are constructively received by him whether he sees fit to enjoy them or not.'" *Estate of Caan v. Commissioner*, No. 14783-18, 161 T.C., slip op. at 20 (Oct. 18, 2023) (quoting *Estate of Brooks v. Commissioner*, 50 T.C. 585, 592 (1968)); *accord Benes v. Commissioner*, 42 T.C. 358, 381 (1964), *aff'd*, 355 F.2d 929 (6th Cir. 1966); *see also Corliss*, 281 U.S. at 378; Treas. Reg. § 1.451-2(a). As discussed below, this Court has consistently applied the constructive receipt doctrine in cases where the taxpayer's assets were forfeited.

Where a taxpayer's funds are criminally forfeited to the USA to satisfy a forfeiture judgment, he is not relieved of the income tax consequences that would have attached to the funds without said forfeiture. *See Gambina v. Commissioner*, 91 T.C. 826, 828–29 (1988). Instead, by forfeiting the funds, the taxpayer has realized the benefits of them and must recognize the funds as gross income to the same extent as if the taxpayer had physically received them. *See Carione v. Commissioner*, T.C. Memo. 2008-262, 96 T.C.M. (CCH) 354, 357; *cf. Old Colony Tr. Co. v. Commissioner*, 279 U.S. 716, 729 (1929) ("[D]ischarge by a third person of an obligation to [the taxpayer] is equivalent to receipt by the person taxed."). More specifically, IRA funds constitute gross income as an involuntary distribution when forfeited to a third party. *See, e.g.*, *Rodrigues v. Commissioner*, T.C. Memo. 2015-178, at *11 (holding that taxpayer constructively received IRA distribution when the distribution was made from taxpayer's IRA to satisfy fine and restitution related to criminal conviction and the distribution was includible in taxpayer's gross income); *Schroeder v. Commissioner*, T.C. Memo. 1999-335, 78 T.C.M. (CCH) 566, 568 (holding that taxpayer constructively received IRA distribution when the Commissioner levied on taxpayer's IRA and the distribution was includible in taxpayer's gross income even though the funds were paid to the Commissioner); *Murillo v. Commissioner*, T.C. Memo. 1998-13, 75 T.C.M. (CCH) 1564, 1565–66 (same where taxpayer's IRA was subject to a civil forfeiture to USA), *aff'd*, 166 F.3d 1201 (2d Cir. 1998) (unpublished table decision); *Santilli v. Commissioner*, T.C. Memo. 1995-278, 69 T.C.M. (CCH) 2974, 2975

**[\*6]** (holding that taxpayer had dominion and control over interest income from interest-bearing bank accounts that were subsequently forfeited as part of a criminal forfeiture, and therefore were includible in taxpayer's gross income); *see also Larotonda v. Commissioner*, 89 T.C. 287, 291 (1987) (holding that payment of federal taxes by means of levy on a Keogh retirement account resulted in constructive receipt of the funds by taxpayer that were includible in the taxpayers' gross income).

B.   *Petitioner's Arguments*

Respondent contends that petitioner constructively received gross income when he criminally forfeited his T. Rowe Price IRA.  In the light of the aforementioned caselaw, we agree.  Petitioner argues, however, that the cases respondent cites, *Carione, Santilli, Old Colony Trust Co.*, and *Murillo*, do not support the position that petitioner constructively received gross income when he involuntarily forfeited his T. Rowe Price IRA pursuant to a criminal forfeiture.

Specifically, petitioner argues that *Carione* is inapposite to the present case because the taxpayer in *Carione* willfully sold his business and then applied the sale proceeds toward a criminal forfeiture.  He argues that *Santilli* is also inapplicable here because that case was heard pursuant to section 7443A(b)(3) and the taxpayer did not address whether he constructively received the interest income in question. Petitioner argues that *Old Colony Trust Co.* does not address constructive receipt and that respondent relies on an out-of-context quote to support his position.  Finally, petitioner argues that *Murillo* does not support respondent's position because in that case the taxpayer willfully settled a forfeiture action by purposefully forfeiting several IRAs that were unrelated to his criminal charges.  We are unpersuaded by petitioner's arguments and address each of these cases, as well as other relevant caselaw, below.

C.   *Analysis*

As discussed above, the Court has consistently applied the constructive receipt doctrine to cases involving both voluntary and involuntary forfeitures.  We have held that, where a taxpayer's funds are criminally forfeited to the USA to satisfy a forfeiture judgment, he has constructively received the funds, and the funds are includible in the taxpayer's gross income.  *See Gambina*, 91 T.C. at 828–29; *Carione*, 96 T.C.M. (CCH) at 357; *Santilli*, 69 T.C.M. (CCH) at 2975.  The Court has applied this rule in cases where the asset seized was a retirement

[*7] account. *See Larotonda*, 89 T.C. at 291; *Schroeder*, 78 T.C.M. (CCH) at 568. Moreover, a taxpayer that involuntarily forfeited an IRA that was directly paid to a third party constructively received the IRA distribution and the taxpayer had to include amount of the distribution in his gross income. *Rodrigues*, T.C. Memo. 2015-178, at *11; *Murillo*, 75 T.C.M. (CCH) at 1566. These cases are based on the application of the constructive receipt doctrine. Accordingly, as discussed in detail below, the funds from petitioner's T. Rowe Price IRA that were forfeited to the USA as an involuntary distribution are includible in his gross income for the 2017 tax year.

In *Carione*, 96 T.C.M. (CCH) at 355, the taxpayer was the sole shareholder of an S corporation. The taxpayer was indicted with others on charges of money laundering, conspiracy, and other crimes under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (2006). *Carione*, 96 T.C.M. (CCH) at 355. The indictment also asked for RICO forfeiture of assets that the taxpayer had acquired or maintained in violation of RICO. *Id*. The district court issued a restraining order prohibiting the taxpayer from selling the assets of the S corporation without the approval of the court. *Id*. The taxpayer obtained the permission of the district court and sold the S corporation's assets to a third party and deposited the $548,309 proceeds into an escrow account to be withdrawn only by an order of the court. *Id*. As part of the taxpayer's plea agreement, the district court issued a consent order of forfeiture signed by the taxpayer and the other defendants that they were jointly and severally liable for a $6.9 million forfeiture judgment. *Id*. The consent order and forfeiture also provided that the proceeds from the sale of the S corporation's assets were subject to forfeiture to pay the balance due as of the payment deadline. *Id*. In August 2000 the sale proceeds were ordered to be withdrawn from the escrow account and applied to the forfeiture judgment. *Id*.

The taxpayer reported the net capital gain from the sale of the S corporation's assets on the S corporation's 1998 return and his individual 1998 return as passthrough income. *Id*. at 355–56. He paid the tax associated with the sale in 2000. *Id*. at 356. Subsequently, the taxpayer filed an amended 1998 return asserting that the proceeds should not be taxable to him because they were directly forfeited to the U.S. Government and he never had dominion and control over them. *Id*. The Commissioner did not allow a refund of the taxes paid, and the taxpayer sued the Commissioner in district court for a refund. *Id*. The district court ruled in the taxpayer's favor and held that the proceeds were taxable to the taxpayer in 2000 when they were ordered to be

[*8] withdrawn from the escrow account and were used to satisfy taxpayer's forfeiture judgment. *Id.* The Commissioner mailed the taxpayer a notice of deficiency for the 2000 tax year for the tax owed on the sale of the S corporation's assets. *Id.*

Before the Tax Court, the taxpayer in *Carione* made the same argument that petitioner makes here: Because the sale proceeds were paid directly to the U.S. Government, the taxpayer never had dominion or control over them such that he could not have constructively received those amounts. *Id.* The Court addressed the taxpayer's dominion and control argument by quoting the district court's analysis on the issue. The district court stated that the caselaw demonstrates "that a taxpayer does not gain income *only* through his dominion and control over something; a taxpayer also realizes taxable income where he 'obtains the fruition of the economic gain which has already accrued to him'." *Id.* at 357 (quoting *Carione v. United States*, 368 F. Supp. 2d 186, 194 (E.D.N.Y. 2005)). Thus the Court, like the district court, relied on caselaw holding that an individual should be taxed on an economic benefit conferred upon him if the benefit has an ascertainable value and that the discharge by a third person of a taxpayer's obligation is equivalent to receipt by the taxpayer. *Id.* at 357–58. Accordingly, the Court held that the sale proceeds were taxable to the taxpayer in 2000 because the taxpayer received the economic benefit of the proceeds when the district court ordered the sale proceeds be released from escrow to satisfy the taxpayer's obligation under the criminal forfeiture. *Id.* at 358.

Furthermore, the taxpayer in *Santilli* was convicted for the illegal sale of narcotics and forfeited to the State of Rhode Island three interest-bearing bank accounts that held the proceeds from the narcotics sales. *Santilli*, 69 T.C.M. (CCH) at 2974. The Court considered whether the interest earned in the forfeited accounts was excludable from gross income because the interest was forfeited as a result of the taxpayer's conviction and, if not, whether the taxpayer was entitled to a deduction under section 165(a). *Id.* Similar to the taxpayer in *Carione,* the taxpayer argued that the interest earned on the forfeited accounts should be excluded from his gross income because he never received the interest income and never had a chance to use it. *Santilli*, 69 T.C.M. (CCH) at 2974.

The Court restated the standard under section 61 that gross income includes "all income from whatever source derived" and that it includes "all 'accessions to wealth . . . over which the taxpayers have

[*9] complete dominion.'" *Santilli*, 69 T.C.M. (CCH) at 2975 (quoting *James*, 366 U.S. at 219); *see also Glenshaw Glass Co. v. Commissioner*, 348 U.S. at 431 ("Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. The mere fact that the payments were extracted from the wrongdoers as punishment for unlawful conduct cannot detract from their character as taxable income to the recipients."). The Court also noted that "a taxpayer obtains possession, custody, and control of unlawfully acquired proceeds on the date he acquires such proceeds." *Santilli*, 69 T.C.M. (CCH) at 2975 (citing *Ianniello v. Commissioner*, 98 T.C. 165, 173 (1992)). In *Ianniello*, the Court held that such proceeds were gross income in the year in which they were acquired even though they were subsequently forfeited in a later year. *Ianniello*, 98 T.C. at 173. Relying on these authorities and principles, the Court in *Santilli* held that the interest the taxpayer earned in the seized and forfeited accounts was income to him in the year the interest was earned. *Santilli*, 69 T.C.M. (CCH) at 2975. The Court also held that the taxpayer was not entitled to a section 165(a) deduction because allowing such a deduction would violate a clearly defined public policy in the United States against trafficking in narcotics. *Santilli*, 69 T.C.M. (CCH) at 2975.

We note that *Santilli* was heard pursuant to section 7443A(b)(3). Section 7443A(b)(3) provides that a Tax Court proceeding where neither the amount of the deficiency placed in dispute nor the amount of any claimed overpayment exceeds $50,000 may be assigned to a special trial judge. However, *Santilli* was not designated a small tax case that is described in section 7463(a).[3] We further note that *Santilli* is consistent with the relevant body of caselaw.

In *Old Colony Trust Co. v. Commissioner*, 279 U.S. at 719–20, the executor of the taxpayer's will challenged the Commissioner's deficiency determination that the taxpayer owed additional tax where the taxpayer's employer paid all of the taxpayer's federal and state income taxes. The Court considered whether the employer's payment of the income taxes assessed against the employee constituted additional taxable income to the employee. *Id.* at 720. The Court agreed with the

---

[3] Section 7463(b) provides that in the case of disputes involving $50,000 or less that are described in section 7463(a) (i.e. small tax cases) where the taxpayer has opted to proceed with the case as a small tax proceeding, a decision entered in such a proceeding is not reviewable by any other court and shall not be treated as precedent for any other case.

[*10] Board of Tax Appeals and held that the employer's payment of the employee's tax obligation was in consideration of the services rendered by the employee and constituted additional taxable income to the employee. *Id.* at 729. The Court expressly stated that the form of the payment did not make a difference and that it was immaterial that the taxes were directly paid to the Government. *Id.* It further explained that "[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed." *Id.*

The Court's decision in *Old Colony Trust Co.* preceded its decision in *Glenshaw Glass Co.* However, its analysis in *Old Colony Trust Co.* discussed the principle that gross income is broadly defined and that it includes a taxpayer's accession to wealth, which was later crystallized in *Glenshaw Glass Co.* Implicit in the Court's holding in *Old Colony Trust Co.* was that the employer's payment of the employee's tax obligation constituted an accession of wealth to the employee because he did not have to pay the liability himself. This Court has reaffirmed numerous times the principle that gross income is broadly defined and includes an accession to wealth (including a discharge of liabilities). *See Young v. Commissioner*, 113 T.C. 152, 157 (1999) (holding that taxpayer realized gross income where taxpayer's obligation to pay attorney's fees was discharged because taxpayer's attorney's fees were paid directly out of certain sale proceeds), *aff'd*, 240 F.3d 369 (4th Cir. 2001); *O'Malley v. Commissioner*, 91 T.C. 352, 361 (1988) (holding that taxpayer realized gross income where a pension fund paid his legal fees related to a criminal indictment); *Huff v. Commissioner*, 80 T.C. 804, 814 (1983) (holding that payment by a third party of taxpayer's civil liabilities constituted gross income to the taxpayer); *Chambers v. Commissioner*, T.C. Memo. 2000-218, 80 T.C.M. (CCH) 73, 75 (holding amounts garnished from employee's wages for alimony and child support were includible in employee's income), *aff'd*, 17 F. App'x 688 (9th Cir. 2001); *Vorwald v. Commissioner*, T.C. Memo. 1997-15, 73 T.C.M. 1697, 1698–99 (holding that amounts transferred from taxpayer's retirement account to his former spouse in garnishment proceeding constituted deemed distributions to taxpayer from his retirement account and were, therefore, includible in his income). While the facts of these cases are different, they are all based on the foundational principle that a third party's discharge of a taxpayer's obligation is an accession to wealth for the taxpayer.

In *Larotonda*, 89 T.C. at 291, the Court held that the taxpayer constructively received $22,341 from his Keogh account and that the proceeds had to be included in the taxpayer's gross income when the

**[\*11]** funds were levied from the Keogh account to pay the taxpayer's tax liability. Next, the Court held that the early withdrawal additional tax on distributions from Keogh plans under section 72(m)(5) did not apply. *Larotonda*, 89 T.C. at 292. In reaching this second conclusion, the Court relied on the purpose of the early withdrawal additional tax under section 72(m)(5), which it said was to prevent voluntary, tax-motivated withdrawal of funds by taxpayers before retirement age. *Larotonda*, 89 T.C. at 292. The Court stated that the withdrawal in *Larotonda* was involuntary because the funds were withdrawn pursuant to the Commissioner's levy and without the taxpayer's participation. *Id.* Thus, even though the withdrawal from the taxpayer's Keogh account was involuntary and the funds were paid directly to the USA pursuant to the Commissioner's levy, the taxpayer was deemed to constructively receive the funds under section 72(m)(4)(A).[4]

In *Murillo*, 75 T.C.M. (CCH) at 1564, the taxpayer pleaded guilty to several financial crimes, including structuring cash deposits into bank accounts for the purpose of avoiding federal currency transaction reporting requirements. In a related civil proceeding, the taxpayer agreed to forfeit several financial accounts, including two IRAs, to the USA. *Murillo*, 75 T.C.M. (CCH) at 1564–65. The taxpayer reported $230,161, the total amount forfeited from the IRAs, as taxable income on his return for the year of the forfeiture but did not include the 10% additional tax on early distributions pursuant to section 72(t). *Murillo*, 75 T.C.M. (CCH) at 1565. The taxpayer also claimed a section 165 loss of $273,417 on Schedule C, Profit or Loss From Business, that the Commissioner disallowed, attributed to the forfeiture. *Murillo*, 75 T.C.M. (CCH) at 1565.

The Court disallowed the section 165(a) loss deduction because allowing the taxpayer a loss deduction for losses arising from illegal activities would undermine a clearly defined public policy against structuring transactions. *Murillo*, 75 T.C.M. (CCH) at 1565. Next, the Court considered whether the taxpayer was subject to the section 72(t) additional tax on early distributions with respect to his IRA forfeitures. The Court rejected the Commissioner's argument that the section 72(t) tax applies regardless "of actual receipt by or benefit to the taxpayer or

---

[4] Section 72(m)(4) provided that if, during a tax year, an owner-employee assigned or pledged (or agreed to assign or pledge) any portion of his interest in a trust described in section 401(a), the portion assigned or pledged would be treated as having been received by the owner-employee as a distribution from the trust.

**[\*12]** the 'voluntary' nature of the distribution." *Murillo*, 75 T.C.M. (CCH) at 1566–67.

Relying on *Larotonda*, the Court in *Murillo*, 75 T.C.M. (CCH) at 1566, first noted that the taxpayer "constructively received the IRA distributions when his accounts were forfeited and cannot escape taxation on the basis that the funds were disbursed to a third party." The Court addressed this threshold issue because, if the distributions were not included in gross income, then there could not have been additional tax under section 72(t).[5] *See* § 72(t)(1) (providing that the amount of the additional tax is "equal to 10 percent of the portion of such amount [of an early distribution] which is includible in gross income"). After addressing the threshold issue of whether the distributions were includible in gross income, the Court held that the additional tax under section 72(t) did not apply because the decree of forfeiture triggered, and was the event that constituted, the IRA withdrawals. *Murillo*, 75 T.C.M. (CCH) at 1566. As in *Larotonda*, the Court did not believe that Congress intended the additional tax under section 72(t) to apply in the context of a forfeiture because the presence of a taxpayer's obligation "is less clearly defined in the case of a forfeiture than when there is a levy to satisfy a previously determined tax liability." *Murillo*, 75 T.C.M. (CCH) at 1566.

Petitioner argues that *Murillo* does not support respondent's position that petitioner constructively received the IRA distribution because the taxpayer in *Murillo* purposefully distributed his IRA accounts and voluntarily reported the income on his return. In contrast, petitioner argues he did not take any willful or voluntary act to distribute the IRA that was forfeited. Finally, petitioner argues that *Larotonda* is no longer good law because the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, § 236(b)(1), 96 Stat. 324, 510, repealed and superseded section 72(m)(4), the provision that was at issue in *Larotonda*.

Petitioner misreads *Murillo*. In *Murillo* the Court expressly stated that "[w]e do not believe the circumstances surrounding the plea agreement were such as to impart a 'voluntary' patina to the IRA withdrawals. In the final analysis, [the taxpayer] had no realistic

---

[5] The Court did not have to specifically decide the threshold issue of whether the distributions should be included in gross income in *Murillo* because the taxpayer included the distributions in income on his 1992 return and the parties did not dispute this point.

[*13] choice." *Murillo*, 75 T.C.M. (CCH) at 1567. Similarly, this case involves an involuntary distribution, and this Court has held that involuntary distributions from retirement accounts constituted gross income to the taxpayer, even where the distributions were paid to a third party.[6] For instance, in *Rodrigues*, T.C. Memo. 2015-178, at *2, the taxpayer was the plan administrator for the United Public Workers Mutual Aid Trust Fund (UPW plan) and was convicted of fraud, money laundering and other crimes in relation to his operation of the UPW plan. As part of his conviction, he was ordered to pay a $50,000 fine to the district court and $378,104 in restitution to United Public Workers (UPW). *Id.* The district court ordered the taxpayer's IRA administrator to disburse the funds it held in the taxpayer's IRA to satisfy the taxpayer's fine and restitution obligations. *Id.* at *3. Subsequently, the IRA administrator issued checks from the taxpayer's IRA account to the clerk of the district court and the UPW. *Id.* at *4.

The taxpayer, like petitioner, argued that the distribution should not be taxable because he personally did not receive the funds nor receive a benefit from the funds and the withdrawals were involuntary. *Id.* at *11. Citing *Larotonda* and *Old Colony Trust Co.*, the Court held that the taxpayer constructively received the IRA distributions when they were made by the IRA administrator to the district court and the UPW in satisfaction of the taxpayer's obligations and that he could not escape taxation because the funds were disbursed to third parties. *Id.* at *11–12. The Court noted that the fact that the transfer was involuntary had no significance. *Id.* at *11.

Similarly, in *Schroeder*, 78 T.C.M. (CCH) at 567, the Commissioner levied on the taxpayer's IRA, and the IRA administrator distributed funds from the taxpayer's IRA to the Commissioner. The taxpayer argued that he was not taxable on the distribution because he did not receive the funds or benefit therefrom, and because the distribution was involuntary. *Id.* at 568. The Court reached the same conclusion as in *Rodrigues* and held that "[a] taxpayer constructively receives an IRA distribution when his or her account is levied and is taxed on it even though the funds are paid to a third party." *Id.* (first citing *Larotonda*, 89 T.C. at 291; and then citing *Vorwald*, 73 T.C.M. (CCH) at 1698–99).

---

[6] *See also Larotonda*, 89 T.C. at 291 (holding that the Commissioner's levy on the taxpayer's Keogh account was an involuntary assignment of the Keogh funds, and therefore the taxpayer constructively received those funds).

**[\*14]** Moreover, we disagree with petitioner that *Larotonda* was abrogated by the repeal of section 72(m)(4).  Former section 72(m)(4)(A) was replaced by section 72(p)(1)(B), which is substantially similar to section 72(m)(4)(A).[7]  In addition, this Court has continued to cite *Larotonda* as binding precedent.  *See Rodrigues*, T.C. Memo. 2015-178, at \*11; *Swanton v. Commissioner*, T.C. Memo. 2010-140, 99 T.C.M. (CCH) 1576, 1578; *Schroeder*, 78 T.C.M. (CCH) at 568; *Murillo*, 75 T.C.M. (CCH) at 1566; *Pilipski v. Commissioner*, T.C. Memo. 1993-461, 66 T.C.M. (CCH) 984, 984.  In short, *Larotonda* was not abrogated by the repeal of section 72(m)(4).

The funds from petitioner's T. Rowe Price IRA were forfeited to the USA as an involuntary distribution.  Though they were not under his control, petitioner constructively received the funds by having received the economic benefit of the funds through satisfaction of his forfeiture liability to the USA.  *See Old Colony Tr. Co.*, 279 U.S. at 729; *Larotonda*, 89 T.C. at 291; *Carione*, 96 T.C.M. (CCH) at 358.  Moreover, the fact that petitioner did not willfully or purposefully cause the distribution is irrelevant.  *See Rodrigues*, T.C. Memo. 2015-178, at \*11; *Schroeder*, 78 T.C.M. (CCH) at 568.  Petitioner constructively received and must include in his gross income a taxable distribution of $427,518 from his retirement account with T. Rowe Price.

III.    *Additions to Tax*

In the Notice, respondent determined that petitioner was liable for an addition to tax of $37,204 under section 6651(a)(1) for failure to timely file, an addition to tax of $28,937 under section 6651(a)(2) for failure to timely pay, and an addition to tax of $3,959 under section 6654(a) for failure to make estimated tax payments.  Respondent has since conceded the addition to tax under section 6654(a).

Respondent bears the burden of producing sufficient evidence to show that it is appropriate to impose the additions to tax.  *See* § 7491(c); *Wheeler v. Commissioner*, 127 T.C. 200, 206 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001).[8]  Once the Commissioner meets the burden of production under section 7491(c), the taxpayer bears the burden of proving the additions to tax do

---

[7] Section 72(m)(4) was repealed by TEFRA § 236(b)(1), 96 Stat. at 510.  *Compare* former § 72(m)(4) *with* § 72(p)(1)(B).

[8] The written supervisory approval requirement found in section 6751(b)(1) does not apply to section 6651 additions to tax.  § 6751(b)(2)(A).

**[\*15]** not apply because of reasonable cause or other exculpatory factors. *Wheeler*, 127 T.C. at 206; *Higbee*, 116 T.C. at 447.

Section 6651(a)(1) imposes an addition to tax if a taxpayer fails to timely file a required income tax return, unless the taxpayer proves that such failure is due to reasonable cause and not due to willful neglect. *United States v. Boyle*, 469 U.S. 241, 245 (1985). The addition to tax under section 6651(a)(1) is 5% of the tax required to be shown on the return if the failure to file does not exceed 1 month, with an additional 5% per month while the failure continues, up to a maximum of 25%. A return is generally considered filed with the Internal Revenue Service (IRS) when the return is delivered to and received by the IRS. *See, e.g.*, *United States v. Lombardo*, 241 U.S. 73, 76 (1916); *Trout v. Commissioner*, 131 T.C. 239, 246 (2008).

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown as tax due on a return, unless the taxpayer proves that such failure is due to reasonable cause and not due to willful neglect. *El v. Commissioner*, 144 T.C. 140, 150 (2015). The addition to tax under section 6651(a)(2) is 0.5% of the tax required to be paid if the failure does not exceed 1 month, with an additional 0.5% per month while the failure continues, up to a maximum of 25%. In a case such as this, where the taxpayer did not file a return, the Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made. *Wheeler*, 127 T.C. at 210.

The SFR prepared by the Commissioner is disregarded for purposes of determining the amount of the taxpayer's liability for the addition to tax under section 6651(a)(1). § 6651(g)(1). The SFR constitutes the return for purposes of the addition to tax under section 6651(a)(2), and the amount of the taxpayer's liability for that addition to tax is determined on the basis of his failure to pay the tax shown on the SFR. § 6651(g)(2).

As discussed above, the section 6651(a)(1) and (2) additions to tax may be reduced if the taxpayer can establish that his failure to file and failure to pay were due to reasonable cause and not willful neglect. Willful neglect means a "conscious, intentional failure or reckless indifference." *Charlotte's Off. Boutique, Inc. v. Commissioner*, 121 T.C. 89, 109 (2003) (quoting *Boyle*, 469 U.S. at 245), *supplemented by* T.C. Memo. 2004-43, *aff'd*, 425 F.3d 1203 (9th Cir. 2005). Treasury Regulation § 301.6651-1(c)(1) gives some guidance on what constitutes reasonable cause for a taxpayer's failure to timely file and failure to

**[\*16]** timely pay.  It provides, in relevant part, that "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause."  It further provides that a taxpayer's failure to pay

> will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.

Treas. Reg. § 301.6651-1(c)(1).  All of the facts and circumstances of the taxpayer's financial situation are considered in determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence, including the amount and nature of the taxpayer's expenses relative to income (or other amounts) that he could, at the time of the expenses, reasonably expect to receive before the due date of the tax payment.  *Id.*

We note that, in his Petition, petitioner did not challenge respondent's determination of the additions to tax.  However, respondent raised the section 6651(a)(1) and (2) additions to tax in his Motion and petitioner objected to the additions to tax in his Opposition.  Accordingly, we will consider them here.  *See* Rule 41(b).

Under section 6012(a) petitioner had an obligation to file a federal income tax return for the 2017 tax year, and his 2017 federal income tax return was due by April 17, 2018.  *See* § 6072(a).  Respondent attached petitioner's IRS Account Transcript for the 2017 tax year (2017 transcript) to his Motion.  The 2017 transcript indicates that petitioner failed to file a federal income tax return for 2017 and made no payments with respect to his 2017 federal income tax liability.  Respondent has satisfied his burden of production under section 7491(c) with respect to the section 6651(a)(1) addition to tax by attaching a copy of the 2017 transcript to the Motion, which indicates that petitioner did not file a 2017 federal income tax return.

Respondent prepared an SFR as authorized by section 6020(b) for petitioner's 2017 tax year.  The SFR informed petitioner that his T. Rowe Price IRA distribution resulted in a tax liability for 2017.  To

**[\*17]** satisfy his burden of production for the addition to tax under section 6651(a)(2), respondent must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made. *See Wheeler*, 127 T.C. at 210. We have addressed on several occasions what constitutes an SFR. *See id.* at 208–10 (discussing *Phillips v. Commissioner*, 86 T.C. 433, 437–38 (1986), *aff'd in part, rev'd in part on another issue*, 851 F.2d 1492 (D.C. Cir. 1988), *Millsap v. Commissioner*, 91 T.C. 926, 930 (1988), and *Cabirac*, 120 T.C. at 170–73). In *Phillips*, 86 T.C. at 437–38, we held that a "dummy return," i.e., page 1 of Form 1040, showing only the taxpayer's name, address, and Social Security number, was not a section 6020(b) return. In *Millsap*, 91 T.C. at 930, we held that unsubscribed Forms 1040 containing only the taxpayer's name, address, Social Security number, and filing status, but that attached subscribed revenue agent reports that had sufficient information to compute the taxpayer's tax liability, were valid SFRs under section 6020(b). In *Cabirac*, 120 T.C. at 170–73, we held that unsubscribed SFRs, showing zeroes on the relevant lines for computing a tax liability and no tax liability, did not meet the requirements of section 6020(b).

In *Cabirac*, 120 T.C. at 172, the Commissioner asserted that a notice of proposed adjustments which contained information as to how the taxpayer's tax liability was computed was in the record; however, the Commissioner did not introduce any evidence that the notice of proposed adjustments was attached to the SFRs. We distinguished *Millsap* from *Cabirac* because in *Millsap*, the revenue agent's report was attached to the SFR. *Cabirac*, 120 T.C. at 172. In *Rader v. Commissioner*, 143 T.C. 376, 382 (2014), *aff'd in part, appeal dismissed in part*, 616 F. App'x 391 (10th Cir. 2015), we summarized the requirements of a section 6020(b) SFR: "To constitute a section 6020(b) SFR, 'the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." *Rader*, 143 T.C. at 382 (quoting *Spurlock v. Commissioner*, T.C. Memo. 2003-124, 85 T.C.M. (CCH) 1236, 1244).

Respondent attached the declaration of Phillip A. Lipscomb (declaration), an attorney in respondent's Office of Chief Counsel who is representing respondent in this case, in support of the Motion. The declaration attaches the administrative case file for the underlying examination with respect to petitioner's tax liability for 2017. Respondent attached the SFR for petitioner's 2017 tax year as Exhibit B to the declaration. The SFR comprises (i) a February 18, 2020, "IRC

[*18] Section 6020 (b) ASFR Certification" that is electronically signed by respondent's ASFR Operation Manager in his Brookhaven office and (ii) the February 18, 2020, Notice 2566.

The ASFR Certification certifies that the Commissioner's ASFR Operation Manager intends that the electronic data including (1) the taxpayer's name, address, and taxpayer identification number, (2) a computation of the taxpayer's tax liability for the tax period in question, and (3) the electronic version of the ASFR Certification with the electronic signature of the officer identified on the document constitute a valid return under section 6020(b). Attached to the ASFR Certification is the Notice 2566 which contains petitioner's name, address, Social Security number, and filing status and a computation of petitioner's tax liability. The computation of the tax liability has separate line items for petitioner's adjusted gross income less the standard deduction for a taxpayer with a filing status of "single" less a personal exemption allowance to reach taxable income on which income tax was calculated. As reflected in the Notice 2566, the computation of petitioner's tax liability was based on the Form 1099–R that respondent received from T. Rowe Price. Accordingly, the SFR meets the requirements of a valid return under section 6020(b). *See Burnett v. Commissioner*, T.C. Memo. 2023-46, at *4–5 (sustaining the Commissioner's determination in the notice of deficiency that was based on the Commissioner's SFR, which was based on unreported income from a Form 1099–R). Additionally, the Notice 2566 and petitioner's 2017 transcript that is attached to respondent's declaration reflects that petitioner failed to pay the tax shown on the 2017 return.

Because respondent has presented evidence that an SFR satisfying the requirements of section 6020(b) was made and that petitioner failed to pay the tax shown on the return for 2017, we conclude that respondent has satisfied his burden of production under section 7491(c) with respect to the section 6651(a)(2) addition to tax.

Petitioner submitted a declaration in support of his Opposition which alleges facts in support of his argument for reasonable cause. In his Opposition, he argues that he had reasonable cause for his failure to file a return and failure to pay the tax due for 2017 because he was incarcerated on February 16, 2017, and his assets were criminally forfeited. He further asserts that he has earned no income since his indictment in December 2015, and was unable to pay the tax deficiency because of lack of funds. Additionally, he asserts that he did not receive the Form 1099–R from T. Rowe Price because his wife divorced him, did

**[\*19]** not communicate with him, and was not forwarding his mail. Petitioner maintains that he lost most of his assets in his divorce, as his wife received their shared home, all of the possessions in the home, and the contents of their joint bank account. Finally, he emphasizes his history of paying his income tax from 2002 through 2015.

As discussed, the section 6651(a)(1) and (2) additions to tax may be reduced if petitioner can establish that his failure to timely file or failure to timely pay was due to reasonable cause and not willful neglect. While we are sympathetic to petitioner's difficulties, we decline to conclude that his failure to timely file and timely pay were justified by reasonable cause. In petitioner's declaration attached to the Opposition, petitioner alleged that (i) he never received the Form 1099–R from T. Rowe Price, (ii) he had not earned any income since 2015, (iii) he was unaware of any filing obligation, and (iv) as a result of the criminal forfeiture and his divorce in March 2018, he was unable to pay the tax due.

Petitioner knew of a general duty to file his tax return as he stated in his declaration that he had "habitually" done so in previous years. He was also aware of the forfeiture that was part of the judgment in his criminal case. Nonetheless, petitioner asserts that he did not know that he had to file a tax return because he did not receive the Form 1099–R. Nonreceipt of tax information forms, such as a Form 1099, does not excuse a taxpayer from his or her duty to report income. *See Du Poux v. Commissioner*, T.C. Memo. 1994-448, 68 T.C.M. (CCH) 667, 668 ("[F]ailure to receive tax documents [such as Form 1099–MISC, Miscellaneous Income] does not excuse taxpayers from the duty to report income."). Further, we have held that nonreceipt of a tax document does not constitute reasonable cause to prevent the application of a section 6662(a) accuracy-related penalty. *See Ashmore v. Commissioner*, T.C. Memo. 2016-36, at \*13 (holding that any error by the company responsible for issuing the taxpayer a Form W–2, Wage and Tax Statement, did not provide reasonable cause because the taxpayer should have known of his missing second Form W–2); *Jones v. Commissioner*, T.C. Memo. 2010-112, 99 T.C.M. (CCH) 1457, 1461 (holding that nonreceipt of a Schedule K–1, Partner's Share of Income, Deductions, Credits, etc., did not constitute reasonable cause where the taxpayer knew that her spouse received a distribution from the entity); *Brunsman v. Commissioner*, T.C. Memo. 2003-291, 86 T.C.M. (CCH) 465, 466 (rejecting taxpayer's reasonable cause defense where the taxpayer received only one Form 1099–MISC but knew he had held two jobs). Accordingly, petitioner's arguments that he did not receive the

**[\*20]** Form 1099–R and that he was unaware that he had an obligation to file a return, fail.

Petitioner should have recognized that there might be tax implications as a result of the forfeiture of his T. Rowe Price IRA and should have sought advice from his attorney or a tax professional regarding a potential tax return filing obligation for 2017. He has not responded with any specific fact that he sought any such guidance. We conclude that petitioner did not exercise ordinary business care and prudence. Moreover, we have held that incarceration is not a reasonable cause for failure to timely file. *See Llorente v. Commissioner*, 74 T.C. 260, 268–69 (1980), *aff'd in part, rev'd in part and remanded*, 649 F.2d 152 (2d Cir. 1981); *George v. Commissioner*, T.C. Memo. 2019-128, at \*9–12, *aff'd per curiam*, 821 F. App'x 76 (3d Cir. 2020). In the absence of evidence of reasonable cause, we conclude that petitioner is liable for the addition to tax for failure to timely file under section 6651(a)(1).

As with the failure to file a return, incarceration is not a reasonable cause for the failure to pay tax. *See George*, T.C. Memo. 2019-128, at \*9–12; *Kohn v. Commissioner*, T.C. Memo. 2009-117, 97 T.C.M. (CCH) 1594, 1597, *aff'd per curiam*, 377 F. App'x 578 (8th Cir. 2010). In the Declaration and his Opposition, petitioner avers that he was unable to pay the amounts owed because of the forfeiture of his assets and his divorce; however, he has not responded to the motion with specific facts showing that he exercised ordinary business care and prudence in providing for his 2017 tax liability. Nor has he presented specific facts concerning his financial situation while the failure to pay penalty accrued. In opposing a motion for summary judgment, the nonmovant may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand*, 98 T.C. at 520; *Murphy v. Commissioner*, T.C. Memo. 2019-72, at \*7. We conclude that petitioner is liable for the addition to tax for failure to timely pay under section 6651(a)(2).

The Court has considered the parties' remaining arguments and, to the extent not discussed above, concludes that they are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*